UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CLASS and COLLECTIVE ACTION

Case No. 25-cv-20924

GWENDOLYN A. DIXON, STACIE
ALEXANDER, and TASIA PRICE, individually,
and on behalf of the class and all others similarly
situated,

      Plaintiff,

v.

INKTEL CONTRACT CENTER SOLUTIONS, LLC.,

      Defendant.

_____/

## INKTEL'S MOTION TO DISMISS AMENDED COMPLAINT[1]

Defendant, Inktel Contract Center Solutions, LLC ("Inktel"), pursuant to Federal Rule 12(b)(6), moves to dismiss Plaintiffs' First Amended Complaint for the reasons set forth below:

### I.    Introduction

Plaintiffs, Gwendolyn A. Dixon ("Dixon"), Stacie Alexander ("Alexander"), and Tasia Price ("Price") (collectively referred to as the "Plaintiffs"), file this lawsuit alleging claims that are rooted and tethered to the common incorrect theory that Plaintiffs were misclassified as independent contractors instead of being treated as employees. Against this fallacy, Plaintiffs, on behalf of themselves and the purported Class and Collective Action, allege the following causes of action against Inktel:

- Count I – violation of the FLSA ("FLSA Wage and OT claim"), ¶¶136-151;

- Count II – violation of Section 502(a)(1)(B) of ERISA ("ERISA determination of rights"), ¶¶152-157;

- Count III – violations of Section 404 and 406 of ERISA ("ERISA breach of fiduciary duty"), ¶¶158-169;

---

[1] Inktel believes Plaintiffs forgot to remove language pertaining to the Florida Whistleblower Act ("FWA") from subsection I, on page 42 of their prayer for relief when drafting this Amended Complaint because the FWA is no longer a claim.

- Count IV – retaliation under the FLSA ("FLSA retaliation"), ¶¶170-178; and,

- Count V – violation of Section 510 of ERISA ("ERISA retaliation claim"), ¶¶179-186.

This Motion seeks dismissal of the entire Amended Complaint without prejudice because it is a shotgun pleading. The Amended Complaint contains five counts where each count after Count I impermissibly adopts the allegations of all paragraphs contained within the preceding count, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.

Next, this Motion seeks dismissal of Count IV (FLSA retaliation) as to Alexander and Price for failing to allege a prima facie case, and even if one is alleged, which it is not, there are no ultimate facts alleged to overcome Inktel's (¶96 (Alexander) ¶116 (Prince)) non-retaliatory reason for termination—reduction in available work hours.

Third, this Motions seeks dismissal of the Collective Action allegations pertaining to the FLSA claims because the complaint fails to sufficiently allege the attributes of the similarly situated employees.

Fourth, this Motion seeks dismissal with prejudice of Counts II (ERISA determination of rights), III (ERISA breach of fiduciary duty), and V (ERISA retaliation) as all fail as a matter of law because Plaintiffs' ERISA claims derive from the same conduct, facts, and circumstances that give rise to purported FLSA misclassification. Further, Count II fails because Plaintiffs fail to allege ultimate facts to establish that they each exhausted their administrative remedies. Count III fails because the underlying decision of how to classify employees is an employment decision, not an ERISA plan decision. Count V fails because Plaintiffs fail to allege sufficient ultimate facts each were retaliated against for complaining about purported ERISA-related benefits.

Finally, this Motion seeks dismissal as to Counts II (ERISA determination of rights) and V (ERISA retaliation claim) because Plaintiffs fail to allege sufficient ultimate facts that Inktel is the plan fiduciary.

## II.   <u>Relevant facts as alleged in the Amended Complaint.</u>

### A.   <u>As to all Plaintiffs</u>

While Inktel does not agree with most of Plaintiffs' factual allegations, they will be taken as true for the purposes of this motion to dismiss. This is a purported class and collective action brought by Plaintiffs on behalf of themselves and a purported class of current and former Inktel customer service and call center representatives alleging they have been misclassified as

independent contractors and should be considered W-2 employees. *See generally* [DE 29 ("Am. Compl.")]. Inktel provides remote call center services (voice, email, and chat-based customer service) to corporate clients, including Roadside Protect, Sephora, and Pandora. *Id*. at ¶¶3, 16. According to Plaintiffs, "Inktel's control over Plaintiffs' schedules work methods, and performance metrics demonstrates that they function as employees, but are unlawfully classified as independent contractors." *Id*. at ¶19. *See also id*. at ¶25 (scheduling); ¶26 (detailed instructions on how to complete tasks); ¶27 (attend mandatory meetings); ¶28 (audits and performance reviews of independent contractors); ¶29 (subject to real time monitoring and charged a weekly fee of $9.98). According to Plaintiffs, Inktel requires independent contractors to sign independent contractor agreements that are a façade designed to mislead the independent contractors. *Id*. at ¶32. Independent contractors are paid an hourly rate, and their work is allegedly devoid of meaningful opportunities for profit or loss based on their own skill and effort. *Id*. at ¶34. According to Plaintiffs, independent contractors have been wrongfully excluded from employment benefits such as a 401(k) plan and health insurance. *Id*. at ¶¶39-40.

      B.      <u>Allegations as to Plaintiff Dixon</u>

On July 19, 2023, Dixon began working at Inktel as an independent contractor where she worked as a dispatch agent for Roadside Protect by providing dispatching services for roadside assistance services and customers that had claims. *Id*. at ¶43. In March 2024, Dixon was later assigned to the Sephora project, but later that month that project was terminated. *Id.* According to Dixon her job responsibilities and duties mirrored those of W-2 Inktel employees. *Id*. at ¶¶43, 44. Dixon allegedly worked overtime, but was not compensated for time and a half. *Id*. at ¶45. Dixon paid the $9.98 weekly access fee to Inktel's virtual platform. *Id*. at ¶47. Dixon complained and questioned her classification as an independent contractor on two separate occasions in January and February 2024. *Id*. at ¶¶53-56. On March 11, 2024, Dixon met with Inktel to address her concern that she was being misclassified as an independent contractor. *Id*. at ¶62. On March 19, 2024, Dixon received an email from Inktel HR acknowledging her complaints about being misclassified. *Id*. at ¶63. On March 29, 2024, Dixon was terminated. *Id.*

4922-2920-8658, v. 1

C.        Allegations as to Plaintiff Alexander

On July 19, 2023, Alexander began working at Inktel as an independent contractor where she was responsible for coordinating roadside assistance services for customers. *Id*. at ¶66.[2] According to Alexander, her job responsibilities and duties mirrored those of W-2 Inktel employees. *Id*. at ¶¶66-68.

On September 13, 2023, in response to being coached by Justin Rodriguez ("Rodriguez") Alexander stated, "The way Inktel manages and scores sounds like I am an employee." *Id*. at ¶74. On September 26, 2023, Rodriguez allegedly altered Alexander's time, but it is unknown from her allegation if her time was altered in her favor or not. *Id*. at ¶75.  On October 16, 2023, Alexander was offered an earlier shift from Rodriguez without a shift bid. *Id*. at ¶76 (hereinafter collectively referred to as "Alexander Purported Retaliation 1").

In March 2024, a shift bid started on her day off, and according to Alexander she did not participate in the required shift bidding because "she thought it was unfair and unethical for Contractors to have to participate." *Id*. at ¶85. According to Alexander, in retaliation Escobar took one hour from her daily schedule and said it was the only shift available. *Id*. (hereinafter collectively referred to as "Alexander Purported Retaliation 2").

On April 5, 2024, Alexander sent Rodriguez an email stating, "Again, I believe you have me misclassified as you do not adhere to my contract." *Id*. at ¶86. On or around April 12, 2024, Alexander alleges she was retaliated and was reprimanded (unknown how) by Rodriguez for submitting a form regarding her pay. *Id*. at ¶89 (hereinafter collectively referred to as "Alexander Purported Retaliation 3").

In August 2024, Plaintiff complained about her time being changed and not being paid while attempting to log in. *Id*. at ¶¶90, 91. On October 3, 2024, Plaintiff alleges in retaliation for her unspecified complaints, her schedule changed (unknown as to how) based on Inktel's company needs. *Id*. at ¶93. On November 18, 2024, Alexander received an email stating that her termination would be effective November 22, 2024: "Please be advised that due to reduction in available work hours, we will be terminating your contract effective November 24, 2024." *Id*. at ¶96 (hereinafter

---

[2] Paragraphs 69 through 71 contradict when Alexander began working for Inktel because they include alleged ultimate facts occurring prior to July 19, 2023. *See* ¶¶69 and 70 (April 12, 2023), 71 (May 12, 2023).

4922-2920-8658, v. 1

collectively referred to as "Purported Alexander Retaliation 4"). A true and correct copy of the November 18, 2024, email to Alexander is attached hereto as **Exhibit A**.[3]

      D.      <u>Allegations as to Plaintiff Price</u>

On July 19, 2023, Alexander began working at Inktel as an independent contractor. *Id*. at ¶101. According to Price, her job responsibilities and duties mirrored those of W-2 Inktel employees. *Id*. at ¶¶101-102.

In September 2023, Price communicated to her supervisor her concerns of being misclassified and not being properly paid. *Id*. at ¶103. In November 2023, Price's schedule was changed, but Price fails to allege whether the change was detrimental. *Id*. at ¶104 (hereinafter collectively referred to as "Price Purported Retaliation 1").

In late April or May 2024, Price asked an Inktel supervisor why she was not classified as a W-2 employee. *Id*. at ¶110. On May 7, 2024, Price mentioned to Cedric Jerome (not alleged as a supervisor) that she was misclassified. *Id*. at ¶111. On May 7 and 9, 2024, the same misclassification complaints were echoed to Rodriguez. *Id*. at ¶112. On June 19, 2024, Price complained about not receiving pay. *Id*. at ¶113. On August 10, 2024,[4] Price received a termination letter stating she was terminated because of "a lack of available hours." *Id*. at ¶116 (hereinafter collectively referred to as "Price Purported Retaliation 2"). A true and correct copy of the August 9, 2024, email to Price is attached hereto as **Exhibit B**.[5]

### III.   <u>**Legal Standard**</u>[6]

"When considering a motion to dismiss, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A plaintiff must plead enough facts to state a claim to relief that is plausible on its face so as to nudge his claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the

---

[3] "The Court has adopted the incorporation by reference doctrine, which provides a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. A document is undisputed when the document's authenticity is not in question. *Quince v. Cerebral Medical Group, P.A.*, No. 23-CIV-14366-MARTINEZ, 2024 WL 4581666, at *2 (S.D. Fla. Jul. 2, 2024) (internal citations and marks omitted). There can be no good faith dispute the email is authentic and it confirms Inktel's non-retaliatory reason for terminating Alexander which were alleged in the Amended Complaint.

[4] On August 9, 2024, the termination email was sent.

[5] As to Price, *supra*, FN 3.

[6] The entire legal standard is section is quoted from *Espinosa v. Piacere News & Café Corp.*, No. 18-CIV-24081-MARTINEZ, 2020 WL 11613505, at *1 (S.D. Fla. Oct. 20, 2020) (internal quotations omitted).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id.*; *see also Speaker v. U.S. Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted)."

"A plaintiff is not required to detail all of the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Id.* Rather than make a determination on whether the plaintiff will prevail, the job of the court on a motion to dismiss is to determine whether the plaintiff is entitled to offer evidence to support the claims pleaded. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Though a proper complaint does not need detailed factual allegations, it must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## IV.    The Amended Complaint is a shotgun pleading.

Paragraphs 152 (Count II), 158 (Count III), 170 (Count IV), and 179 (Count V) all "re-allege and incorporate by reference all previous paragraphs as if fully set forth herein," which is a textbook impermissible shotgun pleading. "A complaint is a 'shotgun' if it violates Rule 8(a)(2) or Rule 10(b)." *New York Packaging II, LLC v. Private D Capital Group Corporation*, No. 22-CIV-20276-MARTINEZ, 2023 WL 2306690, at *3 (S.D. Fla. Feb. 28, 2023) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321-1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *New York Packaging II, LLC*, 2023 WL 2306690, at *4 (internal citations and marks omitted).

4922-2920-8658, v. 1

In the Amended Complaint, Plaintiffs "reallege and incorporate by reference all previous paragraphs as if fully set forth herein" in Counts II through V. Am. Compl. at ¶¶152, 158, 170, 179. Thus, "making the last count to be a combination of the entire [Amended Complaint], 'a mortal sin.'" *New York Packaging II, LLC*, 2023 WL 2306690, at *4 (quoting *Weiland*, 792 F.3d at 1321). *See, e.g., Ryder Truck Rental, Inc. v. Logistics Res. Sols., Inc.*, No. 21-CIV-21573, 2021 WL 9037642, at *2 (S.D. Fla. July 28, 2021) (dismissing complaint because nearly every count incorporates all preceding allegations). Thus, the Amended Complaint should be dismissed as a shotgun pleading.

## V.   Count IV (FLSA retaliation) as to Plaintiffs Alexander and Price fail.

### A.   *McDonnell Douglas* Test.

Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* test plaintiff must first establish a prima facie case. "In order to demonstrate a prima facie case of retaliation under the FLSA, Plaintiff "must demonstrate (1) that she engaged in protected activity under the FLSA; (2) that she subsequently suffered an adverse action by her employer; and (3) that a causal connection existed between the employee's activity and the adverse action." *Ramos v. Hoyle,* No. 08-CIV-21809-MARTINEZ, 2009 U.S. Dist. LEXIS, at *23-24 (S.D. Fla. Jul. 16, 2009) (citing *Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir. 2000)).

"An adverse employment action in the context of a retaliation claim is conduct which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or work-place related. Conduct is materially adverse in the retaliation context if it might have dissuaded a reasonable worker from making or supporting an FLSA claim. However, the anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm, such that petty slights, minor annoyances, and simple lack of good manners are generally not sufficient. . . .  A write-up alone, without any indication that it was accompanied by a reduction in pay, benefits, responsibilities, or some other adverse effect, is insufficient to establish an adverse employment action." *Kubiak v. S.W. Cowboy, Inc.*, 164 F.Supp.3d 1344, 1366-67 (M.D. Fla. Feb. 18, 2016) (internal citations and marks omitted).

"'Typically, a plaintiff may use a showing of close temporal proximity between the protected expression and the adverse employment action to establish causation. However, in the

absence of any other evidence of causation, the Eleventh Circuit has held that a three-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation."' *Williams v. City of Opa-Locka*, No. 18-CIV-21379-MARTINEZ, 2019 U.S. Dist. LEXIS 14832, at * 11-12 (S.D. Fla. Jan. 29, 2019) (addressing a worker's compensation retaliation claim) (quoting *Gonzales v. Pasco Cnty. Bd. of Cnty. Comm'rs*, No. 11-1397, 2013 U.S. Dist. LEXIS 7249, 2013 WL 179948, at *8 (MD. Fla. Jan. 17, 2013)).

"If a plaintiff demonstrates a prima facie case, a defendant has the burden of coming forward with a legitimate non-retaliatory reason for their adverse employment action. If a Defendant meets their burden, the burden then shifts back to Plaintiff to demonstrate that the proffered non-retaliatory reason is a pretext." *Ramos*, 2009 U.S. Dist. LEXIS, at *23-24.

B.  Alexander's alleged retaliation claims fail.

On the face of the Amended Complaint, Alexander's four alleged instances of retaliation fail. With regard to Alexander Purported Retaliation 1, 2, and 3, she fails to allege sufficient (any) ultimate facts to support a prima facie case. Alexander Purported Retaliation 4 fails because Alexander alleged Inktel's non-retaliatory reason for terminating her—reduction in available hours—and she failed to contest that reason with any ultimate facts to support that reason was pretextual. *See* Exhibit A to this Motion.

Alexander Purported Retaliation 1 fails to state a prima facie case for retaliation because she does not allege ultimate facts that her time was altered in an adverse way. *See* Am. Compl. at ¶75 ("On September 26, 2023, Justin manually altered Alexander's time and indicated so on a Teams chat."). Further, it is unclear from the allegations that offering an earlier shift without a shift bid is an adverse employment action. *See id*. at ¶76. On the face of the Amended Complaint, as pled, it is unclear if any of these actions by Inktel, allegedly in retaliation for Alexander complaining on September 13, 2023, are adverse employment actions. Without sufficient (any) ultimate facts alleged, Alexander does not allege an adverse employment action. Thus, Alexander Purported Retaliation 1 fails.

Alexander Purported Retaliation 2 fails to state a prima facie case for retaliation because she did not complain to anyone that she was being treated unfairly as a contractor—she only "thought it was unfair and unethical." *See id*. at ¶85. "[T]he employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation. To that end, some degree of formality is required. The complaint, however, does not need to be

given in writing." *Sanchez v. ABC Professional Tree Services Inc.*, No. 21-CIV-14223-MARTINEZ, 2022 WL 3577087, at * 5 (S.D. Fla. Aug. 19, 2022) (internal citations and quotations omitted). There are no ultimate facts alleged what Alexander thought in March 2024 was communicated to anybody that would lead to one hour from her daily schedule being reduced (the purported retaliation). Thus, Alexander Purported Retaliation 2 fails.

Alexander Purported Retaliation 3 fails to state a prima facie case for retaliation because she does not allege ultimate facts to determine if her purported reprimand is an adverse employment action. *See id*. at ¶89 ("On or about April 12, 2024, in retaliation Alexander was reprimanded by Justin Rodriguez for submitting a form regarding her pay."). Without any indication that the reprimand was accompanied by something more (i.e. reduction in pay, benefits, responsibilities) it cannot be determined if an adverse employment action occurred. *See Kubiak*, 164 F.Supp.3d at 1366-67. Thus, Alexander Purported Retaliation 3 fails.

Alexander Purported Retaliation 4 fails because Alexander fails to allege ultimate facts (any) that Inktel's non-retaliatory reason for terminating her—reduction in hours—was pretextual. While Inktel disputes Alexander's alleged ultimate facts, she does sufficiently allege a prima facie case of retaliation. However, she also alleged Inktel's non-retaliatory reason for terminating her. *See* Am.Compl. at ¶96 ("Please be advised that due to reduction in available work hours, we will be terminating your contract effective November 24, 2024."); Exhibit A to this Motion. Alexander fails to, and Inktel contends she cannot in good faith, allege sufficient ultimate facts to support the necessary showing that Inktel's non-retaliatory reason was pretextual. Thus, Alexander Purported Retaliation 4 fails.

For all the reasons stated above, Alexander's FLSA retaliation claim fails and should be dismissed.

C.  Price's alleged retaliation claims fail.

On the face of the Amended Complaint, Price's two alleged instances of retaliation fail. Price Purported Retaliation 1 fails to allege sufficient ultimate facts to support a prima facie case (lack of adverse employment action and causation). Price Purported Retaliation 2 fails for the same reasons as Alexander Purported Retaliation 4 fails because Price alleged Inktel's non-retaliatory reason for terminating her—reduction in available hours—and she failed to challenge that reason with any ultimate facts to support that it was pretextual. *See* Exhibit B to this Motion.

9

For a similar reason Alexander Purported Retaliation 1 fails, so does Price Purported Retaliation 1 as Price fails to state a prima facie case for retaliation because she does not allege sufficient ultimate facts that her time was altered in an adverse way. *See* Am. Compl. at ¶104 ("In November 2023, Inktel changed Price's schedule without consent or without cause."). It is unclear from the allegations whether the change in schedule is an adverse employment action. Next, even if an unknown change in schedule, without more, is to be considered an adverse employment action, which it should not, Price Purported Retaliation 1 fails to allege sufficient causation between her complaint in September 2023 (communicating to her supervisor concern over her misclassification) and the purported retaliation in November 2023 (unknown change in schedule). In a prior worker's compensation retaliation case, this Court already determined a three-month proximity between alleged protected activity and alleged retaliation is "insufficient to create a jury issue on causation." *Williams*, 2019 U.S. Dist. LEXIS 14832, at * 11-12. For those reasons, Price Purported Retaliation 1 fails.

For the same reason Alexander Purported Retaliation 4 fails so does Price Purported Retaliation 1 because Price fails to allege ultimate facts that Inktel's non-retaliatory reason for terminating her—reduction in hours—was pretextual. While Inktel disputes Price's alleged ultimate facts, she does sufficiently allege a prima facie case of retaliation. However, she also alleged Inktel's non-retaliatory reason for terminating her. *See* Am.Compl. at ¶116 ("a lack of available hours"); Exhibit B to this Motion. Price fails to, and Inktel contends she cannot in good faith, allege sufficient ultimate facts Inktel's non-retaliatory reason was pretextual. Thus, Price Purported Retaliation 2 fails.

For all the reasons stated above, Price's FLSA retaliation claim fails and should be dismissed.

## VI.     **Plaintiffs fail to plausibly allege a Collective Action Claim.**

The FLSA authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). As follows, dismissing a collective action claim under Rule 12(b)(6) is proper "where a complaint fails to sufficiently allege the attributes of the similarly situated employees." *Melendez v. G4S Secure Sols. (USA) Inc.*, No. 20-CIV-24213-GRAHAM, 2020 WL 10140956, at *2 (S.D. Fla. Dec. 11, 2020). Because Plaintiffs fail to plausibly allege a class of similarly situated employees, the Court should dismiss their collective action FLSA claim.

Plaintiffs assert a claim for unpaid overtime wages under the FLSA on behalf of a putative collective defined as follows:

> All current and former Contractors who have worked for Defendant nationwide during the statutory period covered by this Complaint and who elect to join this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

Am. Compl. ¶119.[7] In attempting to support their collective action claim, Plaintiffs allege they "and other potential members of the Collective are similarly situated in that they all suffered unpaid overtime as a result of Inktel's purposeful misclassification of its contract employees, and they are entitled to liquidated damages pursuant to the FLSA." *Id.* ¶121.

Plaintiffs' collective action claim mirrors that dismissed in *Melendez v. G4S Secure Sols. (USA) Inc*. Like Plaintiffs here, the *Melendez* plaintiffs brought a collective action on behalf of all "other current and former similarly situated employees of G4S [who] were also not paid overtime wages as required by law" and who "worked at the Miami International Airport beginning in October 2017." 2020 WL 10140956, at *2. (alterations and quotations omitted). Judge Graham held such "vague and conclusory allegations that an undefined class of employees . . . are 'similarly situated' because they were denied payment of wages" fail to state a facially plausible cause of action and require the collective claim be dismissed. *Id.* The same is true here, where Plaintiffs likewise assert members of the collective are similarly situated simply because they "all suffered unpaid overtime." Compl. ¶119.

Indeed, the Eleventh Circuit has instructed that to maintain a collective action under the FLSA, Plaintiffs "must demonstrate that they are similarly situated . . . with respect to their job requirements and with regard to their pay provisions." *Melendez*, 2020 WL 10140956, at *2 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008)). The Complaint here is completely lacking as to both factors. Beginning with job requirements, each Plaintiff alleges she worked as a dispatcher for an Inktel client that provided roadside assistance services. *Id.* ¶¶43

---

[7] "Contractors" is defined in the Complaint to mean Inktel's workers who are "classifie[d] as independent contractors" and "trained as customer service and call center representatives." *Id.* ¶3. Thus, it appears Plaintiffs seek to represent a collective of all current and former Inktel workers trained as customer service and call center representatives and classified as independent contractors. Regardless, "[i]t is not the defendant['s] responsibility to define the putative class by piecing together factual allegations strewn throughout a complaint; rather, fair notice requires the plaintiffs to clearly define the putative collective class." *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014). Plaintiffs failed to do so here.

11

4922-2920-8658, v. 1

(Plaintiff Dixon), 66 (Plaintiff Alexander), 101 (Plaintiff Price).[8] However, Plaintiffs allege Inktel's clients also include businesses and industries beyond roadside assistance services (like Sephora, Pandora, and "many Fortune 500 companies," *id.* ¶¶3, 16) and attempt to define the collective to include contractors for those clients too. *Id.* ¶¶3, 119. And other so-called Contractors allegedly provided services like "technical support[] and sales," rather than roadside dispatch services like Plaintiffs. *Id.* ¶ 3. Yet, the Complaint includes no description of those other contractors' job requirements—or even their job titles—or why they are similar to Plaintiffs' as roadside assistance dispatchers. *See generally id.*

Like this case, *Dyer v. Lara's Trucks, Inc.* involved a proposed collective that would have ostensibly included employees in multiple job positions. No. 1:12-CV-1785-TWT, 2013 WL 609307, at *2, 4 (N.D. Ga. Feb. 19, 2013). The *Dyer* court held the collective action allegations failed to satisfy Rule 8(a)'s pleading requirements, reasoning, "The Court cannot discern which employees the Plaintiff seeks to include. All of the Defendants' employees? All of the Defendants' employees that share the same or similar job duties?" *Id.* at *4. The same obscurity is present here; Plaintiffs' collective definition makes it impossible to discern which employees are included, where it could be read to encompass multiple unspecified job titles, responsibilities, and Inktel clients. Accordingly, as in *Dyer*, Plaintiffs' collective action claim "does not give [Inktel] fair notice of the Plaintiff[s'] putative class," and should therefore be dismissed. *Id.*

Nor does the Complaint plead any details regarding the alleged similarly situated employees' job descriptions (or even their job titles). Courts have found similar allegations fail to give rise to a plausible right to relief and dismissed collective action FLSA claims on this basis. *See, e.g. St. Croix v. Genentech, Inc.*, No. 8:12-CV-891-T-33EAJ, 2012 WL 2376668, at *3 (M.D. Fla. June 22, 2012) (dismissing collective action claim where "the Complaint provides no description of the job duties (or even the job titles) of the alleged similarly situated employees"); *Creech v. Holiday CVS, LLC*, No. CIV.A. 11-46-BAJ-DLD, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012) (dismissing collective action claim where "Plaintiff only claims the other class members performed the same or similar job duties in that they 'provided customer services' for the Defendants," which "is not descriptive enough to give rise to a plausible right to relief"); *Pickering v. Lorillard Tobacco Co.*, No. 2:10-CV-633-WKW, 2011 WL 111730, at *2 (M.D. Ala.

---

[8] Plaintiff Dixon alleges she worked for another Inktel client, Sephora as well, briefly in March 2024—but alleges nothing regarding the job title or requirements for that role. *Id.* ¶¶ 43–46.

4922-2920-8658, v. 1

Jan. 13, 2011) (dismissing collective action claim where plaintiff alleged he was a "sales representative" but provided no description of the job duties, or even titles, of proposed similarly situated employees).

Plaintiffs say even less about the alleged similarly situated employees' pay provisions. Indeed, no Plaintiff alleges even the total amount of overtime she herself is allegedly owed. *See generally* Am. Compl. ¶¶43–117. Only Plaintiff Alexander alleges her pay rate; that information is not alleged for Plaintiffs Dixon and Price. *See id.* ¶¶ 43–65 (Dixon), 78 (Alexander), 101–17 (Price). And Plaintiffs fail to plead any ultimate facts regarding other contractors' pay rate or hours worked, whether as roadside assistance dispatchers like Plaintiffs or as contractors for other Inktel clients with different positions. *Id.* ¶¶ 119–23. Plaintiffs accordingly fail to satisfy Rule 8(a)'s pleading standards on this required element of their collective action claim, further warranting its dismissal. *See Bobb v. R & L Carriers Shared Servs., LLC*, No. 1:22-CV-2558-MLB, 2023 WL 10407063, at \*2 (N.D. Ga. Feb. 17, 2023) (dismissing collective claim where plaintiff alleged he worked over 40 hours a week without receiving overtime pay, "but sa[id] nothing about the work hours or pay provisions of other [workers]"); *Creech*, 2012 WL 4483384, at \*3 (dismissing collective action claim where "the Complaint does not indicate whether other class members are also wage-and-hour employees or are paid a salary"); *Pickering*, 2011 WL 111730, at \*2 (dismissing collective action claim where complaint lacked allegations regarding similarly situated employees' pay provisions).

Finally, Plaintiffs define the collective to include all "Contractors," regardless of whether said individual worked overtime hours or was denied overtime pay. Am. Compl. ¶ 119. Thus, "it seems Plaintiff[s] want[] to send a notice to *all* [Contractors] and then allow the putative collective members to decide if they may be entitled to overtime compensation." *Bobb*, 2023 WL 10407063, at \*2 (emphasis in original). Because "[t]his clearly would encompass [workers] who were not similarly situated to Plaintiff[s]," their collective action claim fails for this additional reason. *See id.*

In sum, Plaintiffs' collective action claim is devoid of factual allegations establishing a plausible class of similarly situated workers and thus falls short of federal pleading requirements. The Court should therefore dismiss Plaintiffs' collective action FLSA claim (Count I) pursuant to Rule 12(b)(6).

13

## VII.    Counts II, III, and V (the ERISA Claims) fail as a matter of law.

Across the board, Plaintiffs' ERISA claims derive from the exact same facts as their alleged FLSA Claims and, therefore, should be dismissed with prejudice. To assert a claim under ERISA, a plaintiff must be either a "participant" or "beneficiary" of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000) (distinguishing from *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir.1997) (en banc) because Microsoft's ERISA plan expressly made eligible all common law employees).[9] A "participant" to an ERISA can be any employee or former employee of the employer. *Id*. § 1002(7). The linchpin of Plaintiffs' claims is that they were misclassified as independent contractors and should have been classified as employees. *See generally* [DE 29]. Since the ERISA Claims are all based on Plaintiffs' alleged misclassification as an independent contractor, they are duplicative and depend upon Counts I (FLSA Wage and OT claim) and IV (FLSA retaliation claim). *Compare* FLSA Claims, Am. Compl. at ¶¶138,139 (Count I) and ¶¶172, 173(Count IV) to ERISA claims, ¶¶154-156 (Count II), ¶¶160, 162, 163 (Count III), ¶180, 181 (Count V).[10] Further, ERISA does not impose a duty on a plan fiduciary—here in certain allegations Plaintiff alleges Inktel wears both the employer and plan fiduciary hats— to police compliance with the FLSA wage and overtime provisions. When Inktel makes its decision whether to classify someone as an independent contractor or an employee, Inktel is not acting as an ERISA fiduciary when that pay decision is made.

Other federal courts in Florida have previously held in similar cases involving a hybrid FLSA and ERISA complaint a plaintiff cannot state a cognizable claim under ERISA based on an employer's alleged misclassification of its employees. *See Zipp v. World Mortgage Co.,* 632 F. Supp. 2d 1117 (M.D. Fla. 2009) (Antoon, J.) (dismissing with prejudice ERISA claims where plaintiff alleged employer violated ERISA by misclassifying her position as exempt and failing to credit her under a pension plan for proper overtime payments); *Lytle v. Lowe's Home Centers. Inc.*, No. 8:12-CV-1848-T-33, 2014 WL 1689279 (M.D. Fla. Apr. 29, 2014) (same). It is of no moment the misclassification issue in *Zipp* and *Lytle* involved salaried vs. hourly as opposed to this case where the issue is independent contractor vs. hourly—the overarching issue in both cases like this one is still misclassification.

---

[9] *Vizcaino* is cited in paragraph 156 of the Amended Complaint.
[10] Counts I, II, III, IV and V incorporate and reference paragraphs 1 through 77 into each claim.

14

4922-2920-8658, v. 1

In *Zipp*, plaintiffs alleged the defendants improperly classified them as exempt and thus did not pay them overtime as required by the FLSA. 632 F. Supp. 2d at 1119. Plaintiffs alleged claims under ERISA for breach of fiduciary duties. After completing a thorough analysis of competing case law throughout the country on the issue of whether the failure to pay overtime (misclassification) gives rise to viable ERISA claims, the *Zipp* court concluded that the plaintiffs failed to state an actionable ERISA claim for breach of fiduciary duty and dismissed it with prejudice. *Id*. at 1120, 1124-25

In *Lytle*, plaintiffs alleged the defendant improperly classified them as exempt and thus did not pay overtime as required by the FLSA. 2014 WL 1689279, at * 1. Plaintiffs alleged claims under ERISA, including those that defendant breached its fiduciary duty by failing to credit compensation due for unpaid overtime provided under the plan and seeking to enforce the terms of the plan and clarify future benefits. Relying heavily on *Zipp* and the authority cited throughout *Zipp*, the *Lytle* court dismissed the ERISA-based claims with prejudice. *Id*. at *11-13.

However framed, the ERISA claims are based on misclassification and are not cognizable under the law and should be dismissed with prejudice. As the ERISA claims fail, so do the class allegations tied to them. *See* Am. Compl. at ¶¶125-135.

A.   Count II (ERISA claim to determine rights and benefits) fails.

Count II also fails because on the face of the Amended Complaint, Plaintiffs' claim under § 502(a)(1)(B) is a claim seeking determination of benefits requiring each Plaintiff to exhaust their administrative remedies. That is not alleged at all. "Pursuant to ERISA, employers must establish procedures for reviewing employees' claims under their employee benefit plans. Eleventh Circuit precedent requires employees to exhaust these procedures before filing suit for benefits under ERISA." *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 160 (11th Cir.1992) (internal citations omitted). The Eleventh Circuit has made clear that a plaintiff must allege the exhaustion of administrative remedies in the complaint. *See Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.,* 57 F.3d 1040, 1042 (11th Cir.1995). Here, Plaintiffs have failed to allege they each exhausted their administrative remedies under the Plan. Plaintiffs have not alleged any facts that would suggest any of the Plaintiffs attempted to pursue any administrative remedies. *See Waxman v. Equitable Life Assurance Society of the United States*, No. 08-CIV-60657-RYSKAMP, 2009 WL 10701021, at *4 (S.D. Fla. Apr. 10, 2009) (dismissing an ERISA claim by an independent

15

contractor for failing to allege exhaustion of administrative remedies). If Plaintiffs cannot in good faith allege they each exhausted their administrative remedies Count II should be dismissed.

      B.  Counts III (ERISA claim for breach of fiduciary duty).

In Count III, Plaintiffs allege Inkel breached its fiduciary duty to the participants and beneficiaries by, among other things, intentionally misclassifying workers as independent contractors rather than employees to avoid its obligations to contribute to the plan and failing to contribute to the plan. *See* Am. Compl. at ¶¶160 and 162. This underlying decision on how to classify employees is an employment decision, not an ERISA plan decision, and Inktel was not acting in its capacity of an ERISA fiduciary when making this employment decision. *See Lytle*, 2014 WL 1689279 at *14 (finding no breach of fiduciary duty regarding records kept were not incorrect pertaining to employer's classification decision). While business decisions involving classification of employees may have an impact on an employer's ERISA plan, it does not render the claims based on that classification decision ERISA claims. *See Zipp*, 632 F. Supp. 2d at 1124. "Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business. Consequently, ERISA does not govern Blue Cross's business decision about how to classify an employee for payroll and FLSA purposes." *Id*. (quoting *LePage v. Blue Cross & Blue Shield of Minnesota,* Civ. No. 08–584 (RHK/JSM), 2008 WL 2570815, at *5–6 (D. Minn. June 25, 2008)). Discretion in determining how individuals are paid is a business judgment which does not involve the administration of an ERISA plan or investment of assets. *Id*. The collateral effect of the employer's business decision does not elevate those decisions to give rise to an ERISA claim for breach of fiduciary duty. "Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits." *Id*. Similarly, Inktel is not acting in the capacity of an ERISA administrator when making employment-based classification decisions and cannot be held liable for breach of fiduciary duties under ERISA for claims based on allegations of misclassification for failure to pay overtime.

ERISA states that a fiduciary is to discharge its duties "in accordance with the documents and instruments governing the plan[.]" *Id*.; Am. Compl. at ¶159. Inktel, wearing its ERISA plan administrator hat, has a fiduciary duty to credit individuals with the compensation that is required to credit under the terms of the plan. ERISA does not impose a fiduciary duty to double-check compensation-related decisions or to investigate whether an employee might have a legal claim. In sum, even though Inktel is the alleged fiduciary in Count III, it cannot be liable under ERISA

for its FLSA-related classification decisions. Since Count III is based on Inktel's decision to classify Plaintiffs as independent contractors, Count III cannot state a claim for breach of fiduciary duty under ERISA as a matter of law and should be dismissed with prejudice.

It is plainly obvious that Plaintiffs' issue in this case is that they were purportedly misclassified. That is an FLSA claim and should also not be allowed to be re-cast as an ERISA claim.

C.  Count V (ERISA claim for retaliation) fails.

In support of Plaintiffs' ERISA retaliation claim, Plaintiffs mirror the same alleged facts that give rise to her FLSA claims—improper misclassification as independent contractors. *Compare* Compl. at ¶¶172,173 (Count IV) to ¶¶180, 181 (Count V). Under Section 510 of ERISA "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. To prevail under § 510 of ERISA, a plaintiff must show that the "alleged discrimination was designed either to retaliate for the exercise of a right or to interfere with the attainment of an entitled right." *Owens v. Storehouse, Inc.,* 984 F.2d 394, 398 (11th Cir. 1993). Notably, it is "insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan." *Id*.

Missing from the Amended Complaint are sufficient ultimate facts that demonstrate, separate and apart from the purported FLSA retaliation allegations, that Inktel retaliated against the Plaintiffs to interfere with their ERISA rights. As argued above in support of dismissal of the FLSA retaliation claims, only Dixon's FLSA retaliation allegations survive dismissal, but those ultimate facts alleged *only* support a prima facie case for FLSA retaliation and not ERISA retaliation as no ultimate facts are alleged by any of the Plaintiffs that Inktel retaliated against them because of complaining about being denied ERISA-governed benefits. "Section 216 of the FLSA is the exclusive remedy for enforcing rights created thereunder." *Flores v. Chamaleon Enters., Inc.*, No. 21-CV-62391-RAR, 2022 WL 196298, at *2 (S.D. Fla. Jan. 21, 2022). Since the ERISA and FLSA retaliation claims rely on the same factual allegations the ERISA retaliation claim is equivalent and parallel to the FLSA retaliation claim and should be dismissed with prejudice.

4922-2920-8658, v. 1

**VIII.  Counts II (ERISA determination of rights) and V (ERISA retaliation claim) fail as Inktel is not named as an ERISA fiduciary**

If not dismissed with prejudice for the reasons stated in Section VII, above, Plaintiffs fail to allege ultimate facts within Counts II and V or ultimate facts that could be properly incorporated into either count without being subject to dismissal of being a shotgun pleading that Inktel is an ERISA fiduciary. It is required for ERISA claims that ultimate facts be alleged against ERISA fiduciaries. *Zarrella v. Graduate Group*, No. 12-CIV-21976-MARTINEZ, 2012 U.S. Dist. LEXIS 202976, at *6 (S.D. Fla. Aug. 24, 2012). While Count III (ERISA Breach of Fiduciary Duty) at paragraph 161 alleges Inktel is the fiduciary under ERISA, that or a similar allegation is absent from the general allegations and Counts II and V. Thus, Counts II and V should be dismissed for failure to allege sufficient ultimate facts that Inktel is an ERISA fiduciary.

**IX.  Conclusion**

For all the foregoing reasons, the entire Amended Complaint should be dismissed because it is a shotgun pleading. Count IV (FLSA retaliation) as to Alexander and Price should be dismissed. The Collective Action allegations should be dismissed. Counts II (ERISA determination of rights), III (ERISA breach of fiduciary duty), V (ERISA retaliation) along with the class action allegations should be dismissed with prejudice. FinallyCounts II (ERISA determination of rights) and V (ERISA retaliation) fail to allege Inktel is an ERISA fiduciary and should be dismissed.

> **KOPELOWITZ OSTROW**
> **FERGUSON WEISELBERG GILBERT**
> One W. Las Olas Blvd., Suite 500
> Fort Lauderdale, Florida 33301
> Telephone No. (954) 525-4100
> *Attorneys for Defendant*
>
> By:  */s/ Seth D. Haimovitch*
> DAVID L. FERGUSON
> Florida Bar Number:  0981737
> Ferguson@kolawyers.com
> SETH D. HAIMOVITCH
> Florida Bar Number:  0085939
> Haimovitch@kolawyers.com

4922-2920-8658, v. 1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served

via the CM/ECF system to all counsel of record on this 2nd day of July 2025.

By: <u>*/s/ Seth D. Haimovitch*</u>
SETH D. HAIMOVITCH
Florida Bar Number:  0085939
Haimovitch@kolawyers.com

4922-2920-8658, v. 1