**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **GWENDOLYN A. DIXON, STACIE ALEXANDER, and TASIA PRICE, individually, and on behalf of the class and all others similarly situated,** | |
| *Plaintiffs*, | **CIVIL ACTION  NO. 1:25-cv-20924** |
| | **CLASS and COLLECTIVE ACTION** |
| **INKTEL  CONTRACT  CENTER  SOLUTIONS, LLC.,** | |
| *Defendant.* | |

**PLAINTIFFS' OPPOSITION TO
INKTEL'S MOTION TO DISMISS AMENDED COMPLAINT**

SIRI & GLIMSTAD LLP

Jessica Wallace (Bar No. 1008325)
Walker D. Moller (*pro hac vice*)
Oren Faircloth (*pro hac vice*)
Kimberly Dodson (*pro hac vice*)
20200 W. Dixie Highway
Suite 902
Aventura, FL 33180
Tel: (888) 747-4529
E: jwallace@sirillp.com
E: wmoller@sirillp.com
E: ofaircloth@sirillp.com
E: kdodson@sirillp.com

*Attorneys for Plaintiffs and the
Proposed Collective and Class*

Plaintiffs Gwendolyn Dixon, Stacie Alexander, and Tasia Price (collectively "Plaintiffs"), for themselves and all others similarly situated (collectively, "the Putative Class Members") file this Opposition to Inktel Contract Solutions, LLC's ("Inktel" or "Defendant") Motion to Dismiss Amended Complaint (ECF No. 32).

## I.  INTRODUCTION.

Inktel built a profitable business on an unlawful two-tiered system whereby some call center workers are labelled as employees and the rest as "independent contracts," even though they all do the same job, for the same company, under the same supervisors, and with the same expectations. Plaintiffs' claims for unpaid overtime and health benefits under the FLSA, 29 U.S.C. § 201, *et seq.*, and ERISA, 29 U.S.C. § 1002, *et seq.*, flow directly from that misclassification[1] scheme.

In its Motion to Dismiss, Inktel does not dispute the core facts. It does not contest that it classified Plaintiffs and Putative Class Members as independent contractors and denied them overtime pay and health benefits, even though Plaintiffs performed identical work under identical conditions as their W-2 counterparts. In fact, Inktel does not substantively engage with Count I—Plaintiffs' claim for unpaid overtime under the FLSA—at all. Instead, Inktel moves to dismiss Plaintiffs' exhaustive, 44-page First Amended Complaint ("FAC") in its entirety by arguing that it is a "shotgun pleading" that supposedly fails to tie facts to legal claims. That argument falls flat. Each count of the FAC includes detailed factual allegations that more than satisfy the notice pleading requirements under Fed. R. Civ. P. 8 and *Iqbal/Twombley*. Exceeding applicable standards, the FAC thoroughly details the who, what, when, and how of each cause of action.

Moreover, Inktel's motion undermines its "shotgun" theory. After claiming the FAC is too vague to respond to, Inktel goes on to challenge Counts II through V of the FAC by engaging with each claim in minute detail, demonstrating that Inktel has more than adequate notice of Plaintiffs' claims and right to relief. For example, Inktel concedes in its challenge to Plaintiffs' collective action allegations that "it appears Plaintiffs seek to represent a collective of all current and former Inktel workers trained as customer service and call center representatives and classified as independent contractors." ECF No. 32, at 11, n.7. That is correct and telling: the parties appear to

---

[1] In FLSA vocabulary, "misclassification" can also refer to misapplication of the "white collar" exemptions found at 29 U.S.C. § 213. This is not a "white collar" exemption case, but Defendant equivocates on the word and cites to case law using the word "misclassification" in the exemption context to mislead. As discussed below, the Court should be wary of this.

agree on the scope of the putative collective. Likewise, Inktel's challenge to the retaliation claims (Counts IV and V) demonstrates that it fully understands the basis for those claims; it just complains that Plaintiffs failed to plead "ultimate" facts. But Rule 8 requires notice, not proof, and the FAC provides ample detail to support a *prima facie* case of retaliation, including protected activity, adverse action, and causation.

Next, Inktel attacks the ERISA claims by arguing that Plaintiffs failed to exhaust administrative remedies. But that argument makes no sense in the context of a misclassification case because it would have been impossible for non-participants to exhaust the remedies that— because they were classified as independent contractors—were not available to them under the plan. Inktel cannot simultaneously treat its workers as non-employees and then fault them for failing to adhere to an internal appeal mechanism that non-employees are not eligible for. Plaintiffs' allegations make clear they were denied the *opportunity* to participate in the plan altogether, which is precisely why no administrative process was available.

In sum, Inktel avoids confronting the fundamental issues that drive its liability: it classified employees as independent contractors, denied them overtime benefits, and now seeks to avoid liability by mounting baseless procedural attacks. Count I is plausible and properly pled, and each of Plaintiffs' other claims naturally stem from the same unlawful misclassification scheme and denial of benefits. Accordingly, Inktel's Motion to Dismiss must be denied.

## II.  PLAINTIFFS' CLAIMS ARISE FROM A COMPANY-WIDE MISCLASSIFICATION SCHEME.

The FAC consists of five counts: Count I violation of FLSA which is based on Defendant's failure to pay overtime for all hours worked in excess of forty hours in a workweek (FAC, ¶¶136-151); Count II violation of ERISA for failing and/or refusing to provide employee benefits, including but not limited to personal time off, bereavement, vacation, medical insurance, life insurance, retirement, and 401-K, to misclassified Contractors regardless of the fact that Defendant provides employee benefits to similarly situated W-2 employees (*id.*, ¶¶152-157); Count III violation of ERISA §§ 404 and 406 for breach of fiduciary duties in failing to administer an ERISA Plan in accordance of rules and regulations of ERISA (*id.*, ¶¶157-165); Court IV for retaliation under FLSA for terminating the Plaintiffs and similarly situated Contractors for complaining about not being paid overtime pay due to misclassification as a Contractor instead of a W-2 employee (*id.*, ¶¶166-174); and Count V for retaliation under ERISA for terminating Plaintiffs and denying their employee benefits, including but not limited to personal time off, bereavement, vacation,

medical insurance, life insurance, retirement, and 401-K. (*id.*, ¶¶175-182).

### A.   Inktel Uniformly Misclassified Workers Performing Employee Word as Contractors.

Throughout the United States, Inktel provides remote call center services to corporate clients, including many Fortune 500 companies. FAC, ¶ 3. To meet its contractual obligations, Inktel has recruited and trained hundreds of individuals that it classifies as independent contractors to work as customer service and call center representatives (collectively "Contractors"). *Id.*

In addition to these Contractors, Inktel employs a separate group of full-time W-2 employees who perform the same call center and customer service tasks. Only the Contractors, however, are required to pay a $9.98 weekly technology fee and are denied access to employee benefits. *Id.*, ¶ 23. Despite the different classifications, both groups operate under the same strict schedules, follow the same scripts, and are subject to the same monitoring and supervision. *Id.* The Contractors have the same duties, functions, responsibilities and supervisors as the W-2 employees, but only one group receives overtime pay and employee benefits. *Id.*

Plaintiffs' FAC includes approximately fifty detailed, numbered paragraphs showing why they, and Putative Class Members, should have been classified as employees under the FLSA's "economic realities test."[2] Inktel does not challenge the sufficiency of those allegations, nor does it independently challenge Count I—Plaintiff's claim for unpaid overtime under the FLSA. As a result, Plaintiffs do not repeat those allegations here.

### B.   Plaintiffs Seek to Represent a Nationwide Collective of Misclassified Call Center Workers.

Plaintiffs bring this suit on behalf of the following similarly situated persons:

> All current and former Contractors who have worked for Defendant nationwide during the statutory period covered by this Complaint and who elect to join this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). (ECF No. 29, ¶ 119).

The FAC defines "Contractors" as "customer service and call center representatives" who Inktel classifies as independent contractors even though they perform the same tasks and

---

[2] Under the FLSA's economic realities test, workers are employees, not independent contractors, if their work is (1) controlled by the employer, (2) integral to the employer's business, (3) subject to company-imposed conditions, (4) devoid of meaningful opportunities for profit or loss, and (5) performed under strict oversight. *Solis v. A+ Nursetemps, Inc.*, No. 5:07-cv-182, 2013 U.S. Dist. LEXIS 49595, at *14 (M.D. Fla. Apr. 5, 2013). FAC, ¶ 19.

responsibilities as Inktel's W-2 employees. FAC, ¶ 3). These Contractors are known to Defendant, readily identifiable, and can be located and contacted using Defendant's records. *Id.*, ¶ 123.

**C.     Inktel Retaliated Against Plaintiff Alexander After She Complained About Misclassification and Unpaid Work.**

Plaintiff Alexander began working for Inktel on July 19, 2023. She was hired as a dispatcher, responsible for coordinating roadside assistance services for customers.   FAC, ¶ 66. Although her responsibilities mirrored those of Inktel's W-2 employees, she was misclassified as a Contractor. *Id.* Ironically, when initially hired, Alexander was listed in Defendant's payment system as a W-2 employee; however, at the end of the three-week training period, her status was changed from W-2 and she was "reclassified" as a 1099 Contractor. *Id.* Throughout her employment, Alexander reported directly to supervisors Justin Rodriguez and John Escobar, before eventually being reassigned to a person named "Tenoa." *Id.*

From late 2023 through 2024, Alexander raised repeated concerns to Rodriguez and Escobar about her misclassification, including complaints about the rigid scheduling, lack of paid time off, and unpaid off-the-clock work. FAC, ¶¶ 70-86. On September 13, she told Rodriguez: "The way Inktel manages and scores sounds like I'm an employee." *Id.,* ¶ 74. In response, Inktel disciplined Alexander by modifying her shift schedule. FAC, ¶¶ 73-86. On April 5, 2024, Alexander emailed Rodriguez and Escobar with the subject line, "2nd Notification for Schedule Adjustment," stating: "Again, I believe you have me misclassified as you do not adhere to my contract." *Id.,* ¶ 86. Five days later, Inktel reassigned her to a new supervisor. *Id.,* ¶ 88. Following her complaint, Alexander was subjected to steady barrage of retaliatory schedule changes and reprimands. *Id.* ¶¶ 85-89. Ultimately, on November 18, 2024, Inktel terminated Alexander, effective November 22, 2024. *Id.*, ¶ 96. The termination was a direct response to her complaints, which included unpaid wages, denial of benefits, and exclusion from participating in shift bids. *Id.*

**D.     Inktel Also Retaliated Against Plaintiff Price After She Raised Repeated Complaints About Being Misclassified and Denied Benefits.**

Plaintiff Price was also hired by Inktel on July 19, 2023. Like Alexander, she was misclassified as a Contractor despite working under the same controlled conditions as W-2 employees. Like others, she was initially listed in Defendant's payment system as a W-2 employee but was "reclassified" as a 1099 Contractor after completing training. FAC, ¶ 101.  Price worked as a dispatcher for Roadside Protect, handling roadside assistance requests and following Defendant's rigid call center guidelines. She was subject to strict schedules, unpaid time, wage

discrepancies, and constant surveillance. FAC, ¶ 101.

In September 2023, Price raised concerns via Teams with supervisor Chenoa McKinney, about misclassification and improper pay. *Id.*, ¶ 103. In November 2023, Inktel retaliated by changing her schedule without consent or justification. *Id.*, ¶ 104. In late April or early May, Price again raised concerns, this time to her supervisor, Shanoy (last name unknown). When Price asked why she was not classified as a W-2 employee, Shanoy replied that she thought Price *was* a W-2 employee and promised to look into it. *Id.*, ¶ 110. No explanation was ever given. *Id.*

On May 7, 2024, Price complained to her immediate supervisor, Cedric Jerome, who said he would escalate the issue to Justin Rodriguez. *Id.*, ¶ 111. That same day and again on May 9, Price complained directly to Rodriguez, stating she was being misclassified and denied pay, benefits, and breaks. Rodriguez responded that he would check with his supervisor, John Escobar. Like before, no answer was provided. *Id.*, ¶ 112.

In June or July 2024, Price told her Jerome that she needed to take her scheduled break. He refused, telling her she had to clock out first because she was a Contractor, not an employee. *Id.*, ¶ 114. On August 9, 2024, while actively assisting a customer, Price was suddenly removed from the system. *Id.*, ¶ 115. The next day, without warning, she received a termination letter at 1:38 AM, claiming there was "a lack of available hours." She was never offered a reassignment or chance to dispute the decision. Like Alexander and Dixon, she was terminated in retaliation for repeatedly raising concerns about her misclassification and unlawful treatment. *Id.*, ¶ 116.

### E.     Inktel's Misclassification Scheme Made It Impossible for Plaintiffs to Access or Exhaust ERISA Remedies.

Inktel offers employee benefit plans that provide medical, dental, vision and life insurance, along with a 401(k) retirement plan. These benefits are available ***only*** to individuals that Inktel classifies as employees who meet the plans' specific eligibility requirements, such as working a designated number of hours over a particular period, as outlined in the respective benefit plans' terms and agreements. FAC, ¶ 40. Plaintiffs and Putative Class Members were wrongfully denied access to these benefits because Inktel deliberately misclassified them. *Id.*

This misclassification did more than just deprive workers of compensation; it unlawfully excluded them from participating in ERISA-protected plans and interfered with their ability to obtain benefits to which they were entitled as employees. The misclassification has also interfered with their ability to attain rights and benefits protected under ERISA. *Id.*, ¶ 41. These plans were not offered, disclosed, or made available to Plaintiffs because, on paper, they were not employees.

But functionally, they were. Their duties, hours, and responsibilities were indistinguishable from W-2 workers. Because of this misclassification, it was impossible for Plaintiffs—as, technically, **non**-participants in the plans—to exhaust any internal administrative remedies as only employees were provided with enrollment materials and were permitted to make claims under the plans. As a direct result of Inktel's conduct, Plaintiffs and similarly situated workers were excluded from meaningful access to employee benefits, causing substantial financial harm and lost retirement and healthcare coverage. These injuries are actionable under ERISA. FAC, ¶ 40.

## III.   PROCEDURAL HISTORY.

Plaintiffs filed their Class and Collective Action Complaint on February 27, 2025 (ECF 1) challenging Defendant's practices and policies in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Employee Retirement Income Security Act, 29 U.S.C. §§ 29 U.S.C. § 1001 *et seq.* ("ERISA").  On April 21, 2025, Defendant moved for a Motion to Dismiss (ECF 24). On June 13, 2025, Plaintiffs filed the FAC (ECF 29).  On July 2, 2025, Defendants filed a Motion to Dismiss Amended Complaint (ECF 32). Plaintiffs now respond to that motion.

## IV.   STANDARD OF REVIEW.

In considering a motion to dismiss, a plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69, 167 L. Ed. 2d 929 (2007).  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). *Pearson v. InTouchCX Sols., Inc*., 2024 U.S. Dist. LEXIS 171986, *4-5. The threshold for surviving a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure* 12(b)(6) is a low one. *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al*., 711 F.2d 989, 995 (11th Cir. 1983). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. *Id.* at 994-95.

## V.   LAW & ARGUMENT.

### A.   The Amended Complaint is Not a "Shotgun" Pleading.

Defendant states generally that the FAC is a "shotgun" pleading and should be dismissed on those grounds.  For this argument, Defendant relies exclusively on the case of *N.Y. Packaging II LLC v. Private D Capital Grp. Corp*. *See* ECF No. 32, p. 6 (citing *New York Packaging II, LLC*,

No. 22-CIV-20276-MARTINEZ, 2023 WL 2306690, at *3 (S.D. Fla. Feb. 28, 2023) (quoting *Weiland v. Palm Beach Cnty. Sherriff's Off*., 792 F.3d 1313, 1320 (11th Cir. 2015)). As defined in *N.Y. Packaging*, a "shotgun" pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at *9.

As a gateway concern, a "shotgun" pleading is not grounds for dismissal; rather, the remedy is a motion under Fed. R. Civ. P. 12(e) for a more a definite statement. *See Weiland*, 792 F.3d at 1321 n. 10 ("a defendant faced with a shotgun pleading should move the court, pursuant to Rule 12(e)"). In addition, in *N.Y. Packaging*, the plaintiff "did not differentiate between the actions of each [d]efendant in any count" and, instead, alleged "multiple breach of contract claims against all defendants without specifying which defendants are responsible for specific acts or omissions." *N.Y. Packaging*, 2023 LEXIS 34092, at *12-13.

Here, where there is only one Defendant and ample factual detail in each Count, Plaintiffs did not create the type of mayhem and uncertainty that the plaintiff in *N.Y. Packaging* created by adopting and re-incorporating previous allegations. As the Eleventh Circuit explains in *Weiland*, the prohibition on "shotgun" pleadings stems from the dual concern that a plaintiff who successively reincorporates the preceding allegations might be adding increasingly irrelevant facts to each claim or making it difficult to "understand[…] the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324 (rejecting defendant's "shotgun" where the plaintiff stated claims upon which relief could be granted).

Plaintiffs FAC presents neither of those problems. First, all Plaintiffs' claims grow out of a common nucleus of operative facts. Plaintiffs were misclassified, deprived of overtime and benefits, and ultimately terminated for complaining about the same; as such, all the facts are relevant to all the claims. Moreover, out of an abundance of caution, Plaintiffs re-stated the facts in each Count that support each element of the claim described in that Count. For example, in Count V, Plaintiffs' ERISA § 510 claim, Plaintiffs recite the elements of the claim in Paragraph 180 and then walk Defendant through all the facts supporting those elements in Paragraphs 181 through 186. (ECF 29, ¶¶ 181-186).

Thus, pursuant to the requirements of *Iqbal/Twombly*, Defendant is on notice of Plaintiffs' "claim to relief" because: (1) Plaintiffs complained to their supervisors about misclassification (¶ 181); Defendant terminated each Plaintiff (¶ 182); Defendant intended to terminate Plaintiffs to

interfere with their right to employee benefits (¶ 183), and Plaintiffs suffered economic and non-economic harm (¶ 185). *See Twombly*, 127 S. Ct. at 1968-69. Plaintiffs' decision to "re-allege and incorporate" previous paragraphs at Paragraph 179 does not interfere with the requirements of notice pleading in the least. To the contrary, Plaintiffs' previous allegations concerning misclassification and retaliation are both relevant and logically included in Count V. Moreover, Defendant's subsequent arguments for dismissal directed at Counts II through V focus specifically on the numbered paragraphs that support those claims, which undercuts the argument that re-incorporation of previous allegation obfuscates the factual grounds of Plaintiffs' claims. In its motion, Defendant demonstrates it is well aware of which numbered paragraphs support which claims. *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs."). Accordingly, Defendant's Motion to Dismiss based on the "shotgun" theory should be denied.

> **B.    Plaintiffs Properly Allege a Prima Facie Case for Plaintiff Alexander's and Price's FLSA Retaliation.**

> > *i.*    The *McDonnell-Douglas* Burden Shifting Framework Does Not Apply to A Motion Under Rule 12(b)(6).

To argue that Plaintiff Alexander's and Price's retaliation claims under the FLSA are inadequately pled, Defendant cites to this Court's decision in *Ramos v. Hoyle* for the proposition that the *McDonnell-Douglas* burden shifting framework applies to a motion under Rule 12(b)(6). ECF 32, p. 7. *Ramos*, however, is a summary judgment decision under Fed. R. Civ. P. 56 with materially different standard of review. *See Ramos v. Hoyle*, No. 08-21809-CIV-MARTINEZ-BROWN, 2009 U.S. Dist. LEXIS 61062, at *3 (S.D. Fla. July 16, 2009) (citing Fed. R. Civ. P. 56(c)). Moreover, the Eleventh Circuit has repeatedly reminded district courts that that the "*McDonnell Douglas* framework is an evidentiary tool, not an independent standard of liability, and certainly not a pleading standard." *Davis v. Miami-Dade Cty.*, No. 23-12480, 2024 U.S. App. LEXIS 22527, at *8 (11th Cir. Sep. 5, 2024). *See Horace v. ARIA,* No. 23-12414, 2024 U.S. App. LEXIS 6516, at *10 (11th Cir. Mar. 19, 2024) (same); *Picado v. M&S Cargo Express Corp.*, No. 24-21982-CV-WILLIAMS, 2024 U.S. Dist. LEXIS 168181, at *6 (S.D. Fla. Sep. 18, 2024) ("at the motion to dismiss stage, the correct pleading standard in a discrimination case—the same as any other case—is the plausibility standard.")

Thus, where Inktel's dismissal argument is erroneously based on *McDonnell-Douglas* burden shifting, detailed below, the Motion to Dismiss the retaliation claims must be denied.

  *ii.*  <u>The Correct Analysis of an FLSA Retaliation Claim under 12(b)(6).</u>

  To state a claim for retaliation under the FLSA, an employee must allege that (1) the employee engaged in a statutorily protected activity; (2) the employee suffered an adverse action by his or her employer; and (3) this adverse action occurred as a consequence of the employee s protected activity. *Miller v. Roche Sur. & Cas. Co.*, 502 F. App'x 891, 893 (11th Cir. 2012); *Wolf v. Coca—Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

  As to the first prong, "statutorily protected activities include filing an informal complaint, which need not be in writing . . .indeed, [i]nformal complaints to an employer regarding wage practices or any conduct that implicates the FLSA qualify as protected activity." *Fernandez v. City of Fruitland Park*, No. 5:16-cv-326-Oc-34PRL, 2016 U.S. Dist. LEXIS 184472, at *15-16 (M.D. Fla. Dec. 6, 2016) (denying employer's motion to dismiss FLSA retaliation under 12(b)(6)). As to the second prong, "a discharge is clearly an adverse employment action." *Id.,* at *17. For the third prong, plaintiff must prove that "the adverse action would not have been taken 'but for' the assertion of FLSA rights.") *Fernandez*, 2016 U.S. Dist. LEXIS 184472, at *17 (citing *Wolf*, 200 F.3d at 1343).

  *iii.*  <u>Plaintiff Alexander's Retaliation Claims.</u>

  In *Fernandez,* the employee survived a motion under 12(b)(6) by pleading that (1) he complained about inadequate pay and excessive hours, (2) got terminated, and (3) was able to perform the essential functions of his job at an "above satisfactory" level. *Fernandez*, 2016 U.S. Dist. LEXIS 184472, at *17.

  Here, Plaintiff Alexander can do much better: (1) On April 5, 2024, Alexander sent an email to Justin Rodriguez stating, "[Y]ou have me misclassified as you do not adhere to my contract." ECF 29, ¶ 86; (2) Inktel fired Alexander on November 18, 2024, effective November 22, 2024. (ECF 29, ¶ 96), and (3) Alexander's employment between her protected activity on April 5, 2024, and her termination included a transfer to a new manager, a reprimand for submitting a pay change request, and alteration of her hours. *See* ECF 29, ¶¶ 88-93. In other words, Alexander can already demonstrate—a certainly "plausibly" allege—an unbroken chain of causation between her protected activity and her termination. In addition, even before she emailed about "misclassification" on April 5, 2024, she previewed the issue for Inktel by reminding them that she was being treated like an employee and that she lacked the flexibility of a contractor.

Defendant attempts to undermine Alexander's FLSA retaliation claim with a scattershot approach. Defendant argues that each instance of retaliatory behavior should be treated as a separate claim and declares each claim deficient. For example, Defendant argues that Rodriguez's decision to reprimand Plaintiff for submitting a pay change form on April 12, 2024, is insufficient to establish an adverse employment action. *See* ECF 32, p. 9. That allegation establishes causation by demonstrating an intent to discourage pay inquiries – Alexander's termination is the adverse employment action. Defendant does not explain why the FAC should be read piecemeal or why Plaintiff Alexander must state more than one claim for FLSA retaliation. Defendant also argues that Plaintiff's claims fail because she does not explain why Defendant's non-retaliatory reason for discharge was a pretext. Once again, *McDonnell-Douglas* does not apply under an *Iqbal-Twombly* framework.

Thus, Defendant's motion to dismiss Plaintiff Alexander's FLSA retaliation claim must be denied.

        *iv.*   <u>Plaintiff Price's Retaliation Claims.</u>

Defendant also insists that Plaintiff Price's retaliation claim must be chopped into separate instances. Plaintiff Price can state claim for FLSA retaliation under the Eleventh Circuit standard because (1) she complained to Rodriguez and Jerome on May 7, 2024, that she was misclassified as an independent contractor (ECF 29, ¶¶ 111-12); (2) she was abruptly terminated on August 10, 2024; (3) and, in the interim, between her protected activity and termination, Defendant refused to allow her to take breaks and ignored her complaint about working off the clock. (ECF 29, ¶¶ 113-114).

Defendant argues that Price's allegation that Defendant changed her schedule is not an adverse employment action. ECF 32, p. 10. Once again, Plaintiff Price's termination is the adverse employment action that forms the basis of her *prima facie* case of retaliation. Defendant also argues that Price fails to comply with *McDonnell Douglas* by pleading pretext. As set out above, this argument is inappropriate under *Iqbal/Twombly.*

Thus, Defendant's motion to dismiss Plaintiff Price's FLSA retaliation claim must be denied.

**C.**    **Plaintiffs Plausibly Allege a Collective Action Claim.**

Defendant argues that Plaintiff's collective action allegations can be dismissed under an *Iqbal/Twombly* standard, even though "generally, whether a suit can be maintained as a collective

action under the FLSA is determined not on a 12(b)(6) motion, but rather on a motion to conditionally certify a collective action." *Mitial v. Dr. Pepper Snapple Grp.*, No. 11-81172-CIV, 2012 U.S. Dist. LEXIS 90520, 2012 WL 2524272, at *4 (S.D. Fla. June 29, 2012).

Once again, Defendant takes a scattershot approach with its arguments. First, Defendant states that Plaintiffs' collective action allegations are like those in a case called *Melendez v. G4S Secure Sols.,* in which the employees alleged a class only of "other current and former similarly-situated employees of [G4S] were also not paid overtime wages as required by law." *Melendez*, No. 20-24213-CIV-GRAHAM, 2020 U.S. Dist. LEXIS 234679, at *2 (S.D. Fla. Dec. 10, 2020). That class description does not designate the employees that need to receive notice.

In contrast, Plaintiffs' proposed class definition is: "All current and former Contractors who have worked for Defendant nationwide during the statutory period covered by this Complaint and who elect to join this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). (ECF No. 29, ¶ 119). The FAC defines "Contractors" as "customer service and call center representatives" who Inktel classifies as independent contractors even though they perform the same tasks and responsibilities as Inktel's W-2 employees. (ECF 29 ¶ 3). Unless Defendant is purposefully ignoring the defined term – "Contractor" – Plaintiffs' class definition is nothing like the vague definition in *Melendez*, but Defendant concedes in a footnote: "it appears Plaintiffs seek to represent a collective of all current and former Inktel workers trained as customer service and call center representatives and classified as independent contractors." ECF 32, p. 11., fn. 7. That is correct. Thus, Defendant is on notice of which employees belong in the putative class.

But Defendant still complains that it cannot "discern which employees the Plaintiff seeks to include." ECF 32, p. 12 (citing *Dyer v. Lara's Trucks, Inc.*, No. 1:12-CV-1785-TWT, 2013 U.S. Dist. LEXIS 21906, at *2 (N.D. Ga. Feb. 19, 2013). Defendant cites to a string of district court cases, like *Dyer*, dismissing claims under 12(b)(6), on the grounds that the employees failed to provide sufficient information about "job duties." *Id.* Defendant even professes to be confused about who belongs in the class because Contractors provide different services for different clients. *See* ECF 32, pp. 11-12 ("Plaintiffs allege Inktel's clients also include businesses and industries beyond roadside assistance services.").

Defendant misunderstands the conditional certification analysis under § 216(b) and Plaintiffs' claims. Under § 216(b), Plaintiff and Putative Class Members are "similarly situated" if Inktel subjected them to "a common policy or plan that violated the FLSA." *See Roberts v.*

*Publix Super Mkts., Inc.*, No. 8:23-cv-2447-WFJ-CPT, 2024 U.S. Dist. LEXIS 204877, at \*14 (M.D. Fla. Nov. 12, 2024). Here, the "common plan or policy" that binds Plaintiffs and Putative Class Members is Defendant's decision to classify remote call center employees as independent contractors even though they employed workers in the same roles as W-2 employees. In no uncertain terms, Plaintiff's proposed collective includes all employees who were misclassified regardless of their precise job duties – whether they were providing roadside assistance or any other type of customer support – because Defendant violated the FLSA with respect to any Contractor who should have been treated as an employee.

The district court cases, like *Dyer*, cited by Defendant address proposed collectives of employees who were misclassified as exempt under the FLSA's "white collar" exemptions or hourly employees who claim to work "off-the-clock". *See, e.g., Dyer*, No. 1:12-CV-1785-TWT, 2013 U.S. Dist. LEXIS 21906, at \*2 ([employee] claims that all of her positions were not exempt under the FLSA and that she principally performed non-exempt job duties); *Creech v. Holiday CVS, LLC*, No. 11-46-BAJ-DLD, 2012 U.S. Dist. LEXIS 144838, at \*2 (M.D. La. Sep. 26, 2012) (plaintiff claims to perform uncompensated, off-the-clock hours of work). In cases like that, the court cannot authorize notice to the putative class without job titles and duties because without those details there is no way to discern a "common plan or policy" that violates the FLSA. Here, however, Defendant, and the Court, knows that any remote customer service worker who is treated like one of Defendant's W-2 remote customer service workers is misclassified and, thus, a member of the putative class.

Finally, Defendant argues that Plaintiffs' collective action allegations are incomplete because Plaintiffs do not identify which individuals worked overtime. ECF 32, p. 13.  Defendant cites to *Bobb v. R & L Carriers Shared Servs., LLC* for the proposition that Plaintiffs failed to identify the "work hours and pay provisions of other [workers]." No. 1:22-CV-2558-MLB, 2023 WL 10407063, at \*2 (N.D. Ga. Feb. 17, 2023). First, that argument simply misstates the facts. Plaintiffs' FAC leaves no room for misunderstanding that Plaintiffs and Putative Class Members were paid as 1099 contractors only for the hours that they were logged into to Defendant's computer platform (*See* ECF 29, ¶ 99) while other remote call center workers were paid as W-2 employees. The *Bobb* case, like *Dyer* and *Creech,* does not address employees who are treated as contractors and denied overtime pay for that reason – indeed, Defendant has identified no case that addresses a putative class of misclassified employees in a Rule 12(b)(6) motion. In *Bobb,* the

district court dismissed the class allegations for the same reason the court dismissed class allegation in *Dyer* and *Creech*: "Plaintiff's barebone allegations are insufficient to state a claim for collective relief." *Bobb*, 2023 U.S. Dist. LEXIS 236343, at *4. Plaintiffs' class definition does not suffer from that defect.

      In addition, Defendant walks onto thin ice by complaining that Plaintiffs did not plead more facts about the overtime hours worked by Putative Class Members. The FAC states unequivocally, "[The Putative Class Members] all suffered unpaid overtime as a result of Defendant's purposeful misclassification of its contract employees, and they are entitled to liquidated damages pursuant to the FLSA." ECF 29, ¶ 121. Plaintiffs plead succinctly that all Contractors worked overtime. Under the FLSA, Defendant was required to "maintain and preserve" records of hours worked and total earnings for three years. *See* 29 C.F.R. § 516.2(a)(7). Here, where Defendant failed to maintain adequate records because it treated Plaintiffs and Putative class members as contractors, Defendant "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [Defendant] kept records in accordance with the requirements of FLSA." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985). In other words, at the pleading stage, Defendant must accept Plaintiffs' allegations that all Contractors worked overtime, and each member of the putative class can verify those hours with their own records and testimony at trial because Defendant lost the chance at rebuttal when it misclassified them.

      The reality is that an FLSA case based on an employer's misclassification of its employees as independent contractors is very different than the cases cited by Defendant for the proposition that FLSA collective allegation can be dismissed under *Iqbal/Twombly*. Refusing to accord a worker any FLSA rights is not similar to misapplying a "white collar" exemption or overlooking off-the-clock work. Misclassifying employees as independent contractors is egregious, and district courts within the Eleventh Circuit typically grant conditional certification in that context. *See Evans v. Ent. 2851 LLC,* No. 8:23-cv-00498-WFJ-SPF, 2024 U.S. Dist. LEXIS 15701, at *8 (M.D. Fla. Jan. 30, 2024) (granting conditional certification for all workers classified as independent contractors); *Webb v. Rms Props.*, No. 0:18-60177-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 234457, at *10 (S.D. Fla. Feb. 19, 2019) (same); *Rangel v. Compliance Staffing Agency, LLC,* No. 3:16-CV-30 (CDL), 2016 U.S. Dist. LEXIS 89780, at *11 (M.D. Ga. July 12, 2016) (same); *Peña v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1303 (S.D. Fla. 2014) (same, with detailed

14

analysis).

Accordingly, Defendant's motion to dismiss Plaintiffs' collective action allegations must be denied.

**D.     Plaintiffs' ERISA Claims (Counts II, III and V) Are Plausibly Alleged and Legally Sound.**

*i.   Zipp* and *Lytle* Address a Different Kind of "Misclassification."

Inktel cites to *Zipp v. World Mortgage Co.*, 632 F. Supp. 2d 1117 (M.D. Fla. 2009) and *Lytle v. Lowe's Home Centers, Inc.,* No. 8:12-cv-1848, 2014 U.S. Dist. LEXIS 59276 (M.D. Fla. Apr. 29, 2014), but both those cases involved employees who were already on the payroll as W-2 workers but were slotted into the wrong FLSA exemption. *See Zipp,* 632 F. Supp. at 1120; *Lytle*, 2014 U.S. Dist. LEXIS 59276, at *6. That "exempt-versus-non-exempt" error merely affected *how much* overtime credit flowed into an existing pension plan. Independent-contractor misclassification is qualitatively different: it denies plan eligibility altogether**,** stripping workers of every ERISA-protected benefit from day one. Courts, including the Eleventh Circuit, have recognized ERISA claims in precisely that scenario. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1015 (9th Cir. 1997); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488 (11th Cir. 1993) (reversing the district court's granting of summary judgment on ERISA employee benefit claim finding issues of fact remained as to whether the plaintiff was an employee or independent contractor). Defendant states, "It is of no moment the misclassification issue in *Zipp* and *Lytle* involved salaried vs. hourly as opposed to this case where the issue is independent contractor vs. hourly—the overarching issue in both cases like this one is still misclassification." (ECF 32, at 14). But the nature of the misclassification fundamentally alters the legal analysis.

The dispute in *Zipp* and *Lytle* concerned internal plan calculations, *not plan access*. In those cases, the question was the degree to which plaintiffs' exempt or non-exempt status under the FLSA impacted the amount of creditable compensation. Here, by contrast, the question is whether Plaintiffs, by virtue of being labelled Contractors instead of W-2 employees, were wrongly denied benefits owed to them under the terms of the plans. They were never enrolled, never offered plan documents, and never given any opportunity to file a claim under the plans. That is the same scenario in which the courts in *Vizcaino* and *Daughtrey* found viable ERISA claims. Inktel's attempt to obfuscate by equivocating on the word, "misclassification," ignores the legal and factual gulf between a worker denied benefits outright and one quibbling over the calculation of covered

compensation.

Because Plaintiffs challenge their total exclusion from the benefit structure, not a formulaic dispute over inputs into an existing plan, *Zipp* and *Lytle* are inapposite, and Inktel's argument fails.

### ii. Count II Survives the Failure to Exhaust Defense

Exhaustion is not a rigid requirement. Under Eleventh Circuit precedent, a court will excuse exhaustion where it is "impossible" for the claimant to pursue the internal review procedures. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1216-18 (11th Cir. 2000) (holding that exhaustion is not required when it would be futile, the administrative remedy is inadequate, *or meaningful access to the administrative review is denied*). As the Eleventh Circuit emphasized in *Watts v. BellSouth Telecomms.*, Inc., 316 F.3d 1203, 1210 (11th Cir. 2003), where the plan structure or communications leave a participant unaware that exhaustion is even required, the exhaustion bar does not apply. *Id.* ("our doctrine of exhaustion of administrative remedies in ERISA cases includes this rule: If a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court.").

That is the situation here. Plaintiffs were never told that a plan existed, never provided any Summary Plan Descriptions, Plan Documents, or other documents apprising them of their rights or avenues for exhaustion, never given enrollment instructions, and never told how or where to file a claim. FAC, ¶¶ 39–41. They were all "misclassified" as independent contractors rather than employees, and therefore never enrolled in, or were even deemed eligible for, Defendant's ERISA-governed benefit plans. FAC, ¶ 39.

This is not a case where Plaintiffs bypassed the claims process. It is a case where no process was ever made available to them because Inktel refused to acknowledge them as eligible participants. Having not received or given access to a single Plan document, there is no way the Plaintiffs could have known who the fiduciaries of the plans were. Simply put, they were devoid of the who, how, when, where to exhaust any remedies. These allegations make clear that no "administrative remedy" was ever "available" to them because they were affirmatively told they were non-participants and were never given any in-plan mechanism to present a claim. Without access to this information, Plaintiffs lacked the basic information about whom to contact or what steps to take to challenge their denial of benefits.

The only case that Defendant cites for the proposition that an independent contractor is nonetheless required to exhaust administrative remedies is *Waxman v. Equitable Life Assurance Society of the United States,* but the plaintiff in that case does not allege he was deprived of benefits due to his misclassification as a contractor. Instead, he claimed entitlement to funds in an "Equitable Retirement Plan" for reasons the court could not discern. *See Waxman,* No. 08-cv-60657, 2009 U.S. Dist. LEXIS 151650, at *11 (S.D. Fla. Apr. 10, 2009). In any event, exhaustion is an affirmative defense, not a pleading requirement. Plaintiffs are not obligated to anticipate and rebut it in their complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that "failure to exhaust is an affirmative defense . . . and [claimants] are not required to specially plead or demonstrate exhaustion in their complaints."); *See Bibbs v. Sheriff of Cook Cty.*, 618 F. App'x 847, 849 (7th Cir. 2015) ("Since failure to exhaust administrative remedies is an affirmative defense, [a complaint] could only be dismissed for failure to state a claim if it was clear from the face of the complaint that the affirmative defense applied"); *Martinez v. Superior Healthplan, Inc.*, 2017 U.S. Dist. LEXIS 232702, at *21-22 (W.D. Tex. Sep. 26, 2017) ("Because Plaintiffs do not have to allege an exhaustion of administrative remedies at the pleading stage, Defendants' motion to dismiss on that ground is denied.").

Even if exhaustion were plausibly at issue, dismissal under Rule 12(b)(6) would be improper. Plaintiffs have adequately alleged that they were never allowed to access the plan, and where access is denied, exhaustion is not required.

### iii. Count III States a Classic Fiduciary Duty Claim Untethered to the FLSA.

Count III alleges that Inktel, acting as a plan fiduciary, deliberately excluded workers from the plan to save contribution dollars. FAC, ¶162. That allegation strikes at the core of ERISA's fiduciary standards. The duty of loyalty prohibits plan administrators from making decisions that advance the employer's financial interests at the expense of plan participants. *See Leigh v. Engle*, 727 F.2d 113, 122 (7th Cir. 1984) (discussing how misuse of plan assets implicates fiduciary responsibilities); *Owens v. Metro. Life Ins. Co.,* 210 F. Supp. 3d 1344, 1356 (N.D. Ga. 2016) ("Liability may 'be imposed even where there is 'no taint of scandal, no hint of self-dealing, no trace of bad faith.'" (citation omitted)). The duty of prudence requires fiduciaries to act solely in the interest of participants and beneficiaries, not to manipulate eligibility in order to sidestep benefit obligations.

This is a textbook fiduciary breach. It does not depend on whether Plaintiffs are ultimately

entitled to overtime under the FLSA. Rather, it turns on whether Inktel improperly exercised discretion in administering the plan for its own benefit by knowingly excluding workers who qualified as employees under ERISA's functional test. *See Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1340 (11th Cir. 2000) (citing *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 319 (1992) ("the term 'employee' as used in the ERISA statute refers to the common law analysis, which distinguishes between employees and independent contractors by examining at least 14 factors."); *see also* 29 U.S.C. § 1002(9) (defining "employee" under ERISA as a common-law employee, not one arbitrarily designated by the employer)). Intentionally misclassifying workers for the purpose of denying plan benefits plausibly constitutes a breach of fiduciary duty.

Inktel reprises its misleading reliance on *Lytle* and *Zipp.* Quoting liberally from *Lytle* and *Zipp*, Defendant reaches the conclusion that "even though Inktel is the alleged fiduciary in Count III, it cannot be liable under ERISA for its FLSA-related classification decisions." ECF 32, at 16-17. Unlike the exemption issues in *Lytle* and *Zipp,* Count III asserts a standalone fiduciary-duty claim grounded in Inktel's self-interested exclusion of eligible employees from plan participation, not its FLSA-related classification decisions. As stated in Count III of the FAC, "Defendant intentionally misclassified Plaintiffs and members of the ERISA Class as independent contractors to avoid its obligations to contribute to the Plan on their behalf." FAC, ¶ 162. That conduct violates ERISA's fiduciary obligations regardless of whether those same workers were denied overtime under the FLSA. Accordingly, Count III is both legally sound and entirely independent of Plaintiffs' FLSA claims.

### iv.  Plaintiffs' ERISA Claims (Count V) for Retaliation Do Not Fail

Defendant attacks Plaintiffs' claims for retaliation under ERISA § 510 by arguing that, "[m]issing from the Amended Complaint are sufficient ultimate facts that demonstrate, separate and apart from the purported FLSA retaliation allegations, that Inktel retaliated against the Plaintiffs to interfere with their ERISA rights." (ECF 32, p. 17). It is not entirely clear whether Defendant is arguing that Plaintiffs have not stated a *prima facie* case of retaliation under ERISA at all, or whether Defendant is arguing that the *prima facie* case cannot overlap with FLSA retaliation. Thus, Plaintiff will address both arguments.

Under Section 510 of ERISA "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140.

To state a *prima facie* case of retaliation under ERISA, Plaintiffs must show (1) that [they] are entitled to ERISA's protection, (2) were qualified for the position, and (3) were discharged under circumstances that give rise to an inference of discrimination." *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1358 (M.D. Fla. 2014) (citing *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993).

Here, Plaintiffs specifically raised concerns with Defendant's supervisors, HR representatives, and managerial staff regarding their improper classification as independent contractors, which resulted in their unlawful exclusion from receiving ERISA-protected benefits to which they were entitled as employees. (ECF 29, ¶181). Defendant retaliated against Plaintiffs due to their exercise of ERISA-protected rights and their complaints about the denial of ERISA benefits by engaging in adverse employment actions, including, but not limited to: (a) Plaintiff Dixon being terminated without explanation shortly after formally raising concerns about misclassification as a Contractor and denial of ERISA-governed benefits (ECF 29, ¶ 64);  (b) Plaintiff Alexander having her work hours reduced and subsequently being terminated without explanation shortly after objecting to her misclassification as a Contractor and raising concerns regarding her exclusion from ERISA-protected employee benefit plans(ECF 29, ¶ 96); and (c) Plaintiff Price being terminated shortly after raising concerns about misclassification as a Contractor and denial of ERISA-governed benefits. (ECF 29, ¶ 182).  These allegation more than satisfy the pleading requirements under Rule 12(b)(6). *See Olson.*, 63 F. Supp. 3d at 1359 (plaintiff alleged only that she sought substance abuse treatment and was subsequently deprived of commission and benefits.)

Though Plaintiffs can easily make out a *prima facie* case of retaliation under ERISA § 510, Defendant appears to suggest that case cannot share facts with an FLSA retaliation claim. The one case cited by Defendant, however, does not address ERISA at all and, instead, holds that the FLSA preempts state law claims that seek duplicative recoveries under FLSA rights. *See Flores v. Chamaleon Enters, Inc.*, No. 21-CV-62391-RAR, 2022 U.S. Dist. LEXIS 11703, at *4 (S.D. Fla. Jan. 21, 2022) ("courts dismiss duplicative state law claims"). Accordingly, Defendant's motion to dismiss Plaintiffs' ERISA retaliation claims must be denied.

        *v.*   Defendant is Named as an ERISA Fiduciary.

Defendant's final argument for dismissal of Plaintiffs' claims for ERISA § 510 retaliation (Count V) and ERISA § 502(a)(1)(B) denial of benefits can most kindly be characterized as a

longshot. Citing *Zarrella v. Graduate Group*, Defendant claims, "[i]t is required for ERISA claims that ultimate facts be alleged against ERISA fiduciaries." ECF 32, p. 18 (citing *Zarrella,* No. 12-CIV-21976-MARTINEZ, 2012 U.S. Dist. LEXIS 202976, at *6 (S.D. Fla. Aug. 24, 2012)). That is not a 12(b)(6) pleading standard. The *Zarella* decision addresses the plaintiff's motion to remand a case to state court where complete preemption under ERISA required defendants to be fiduciaries. *Id.,* at *6. That case has no bearing on Plaintiff's FAC.

Having read *Lytle,* Defendant should be aware that, "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan," which could include the plan administrator, the plan sponsor, third-party insurers, or other fiduciaries. *See Lytle*, 2014 U.S. Dist. LEXIS 59276, at *11 (citing *Garren v. John Hancock Mut. Life Ins., Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Here, in Counts II, III, and V, Plaintiffs assert that Defendant controlled the plan's administration. *See* ECF 29, ¶¶ 154, 161 & 183.

Moreover, Defendant concedes that Paragraph 161 in Count III of the FAC identifies Defendant as a fiduciary but declares that allegation cannot be rolled into the other Counts without creating the dreaded "shotgun" pleading. As set out in Section V(A), *supra*, the FAC is not a "shotgun" pleading, and there is no blanket prohibition on the recognition that a factual allegation that supports one claim cannot be recognized by the Court to support another and another still.

Accordingly, Defendant's motion to dismiss Plaintiffs' ERISA claims must be denied.

## VI.    CONCLUSION

Based on the facts properly pled in the FAC the supportive legal arguments and case law stated herein, Defendant's Motion to Dismiss should be denied in its entirety.  If the Court finds that any of the Plaintiffs' counts could survive Defendant's Motion to Dismiss if amended, then the Plaintiffs ask the Court to allow the Plaintiffs to amend the Complaint.


Respectfully submitted this the 16th day of July, 2025.


/s/ Jessica Wallace
Jessica Wallace (Fl. Bar No. 1008325)
Walker D. Moller (*pro hac vice*)
Oren Faircloth (*pro hac vice)*
Kimberly Dodson (*pro hac vice*)
20200 W. Dixie Highway
Suite 902

Aventura, FL 33180
Tel: (888) 747-4529
E: jwallace@sirillp.com
E: wmoller@sirillp.com
E: ofaircloth@sirillp.com
E: kdodson@sirillp.com

*Attorneys for Plaintiffs and the Proposed
Collective and Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email

via the CM/ECF system to all counsel of record on this 16th day of July, 2025.

*/s/ Jessica Wallace*
Jessica Wallace (Fl. Bar No. 1008325)