THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| GWENDOLYN A. DIXON, et al., *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> INKTEL CONTRACT CENTER SOLUTIONS, LLC, <br><br> Defendant. | Case No.: 25-cv-20924 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
MOTION TO CERTIFY COLLECTIVE ACTION**

Defendant Inktel Contract Center Solutions, LLC ("Inktel") establishes herein why Plaintiffs' Motion for Conditional Certification of a Collective Action (Doc. 43) ("Motion") should be denied in full.

**INTRODUCTION**

There are two straightforward showings required for conditional certification of a collective action under the FLSA, and Plaintiffs make neither of them. As the Eleventh Circuit has long instructed, Plaintiffs must show (a) there are other employees who desire to opt-in, and (b) those employees must be similarly situated with respect to their job requirements and pay provisions. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991). Plaintiffs do not come close to establishing either perquisite here. They ask to certify a collective of hundreds of individuals who worked as Inktel's independent contractors serving Inktel's diverse range of corporate clients, in various functions including customer service, technical support, roadside

assistance, and sales. But Plaintiffs provide no evidence, or even meaningful attempt to argue, that all those Inktel contractors are similarly situated, or that any of them want to join this suit.

Plaintiffs thus fail to carry their burden to show conditional certification of their FLSA claims are warranted, and their Motion should be denied in full.

## RELEVANT BACKGROUND

Inktel is a leading business process outsource organization that provides contract center solutions to an impressive portfolio of clients across varied industries, including various Fortune 500 companies, disaster recovery operations, energy and transit authorities, disaster recovery operations, educational institutions, and government and public sector entities, among others (collectively, "Clients"). Inktel supports its operations in part by retaining independent contractors to serve its Clients' various needs. These independent contractors perform various functions, including, for example, technical support for remote online learning, customer support for food delivery services, and, in Plaintiffs' case, roadside assistance scheduling for Clients' insureds.

Plaintiffs formerly worked as call center representatives for Inktel's client Roadside Project (and, as to Plaintiff Dixon, Sephora) pursuant to Independent Contractor Agreements with Inktel. They filed this action alleging Inktel misclassified them as independent contractors when they are really employees entitled to overtime pay under the FLSA. *See* 29 U.S.C. § 207(a).[1] Plaintiffs assert a claim for unpaid overtime wages under the FLSA on behalf of a putative collective defined as follows:

> All current and former Contractors who have worked for Defendant nationwide during the statutory period covered by this Complaint and who elect to join this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

---

[1] Inktel disputes Plaintiffs' claims in their entirety.

2

Amended Compl., Doc. 29 ("AC") ¶ 119.[2] The term "Contractors" is defined elsewhere in the Amended Complaint to mean the "hundreds of individuals that [Inktel] classifies as independent contractors." *Id.* ¶ 3. In other words, Plaintiffs seek to represent a collective of "[a]ll current and former [individuals classified as independent contractors] who have worked for Defendant nationwide" during the relevant period. *Id.* ¶¶ 3, 119.

On September 29, 2025, Plaintiffs filed the subject Motion to certify this case as a collective action and issue notice (Doc. 43). In support of the Motion, Plaintiffs provide essentially nothing. Each Plaintiff submits a near-identical form declaration insisting, with no supporting facts, that all Inktel independent contractors are similarly situated. *See* Doc. 43-1. They also attach Plaintiff Alexander's Roadside Project Independent Contractor Agreement, and Plaintiff Dixon's Sephora Independent Contractor Agreement. *Id.* That is it. Plaintiffs do not even contend there are similarly situated independent contractors who would opt-in to the case, just that each Plaintiff "believe[s] all remove call center workers who work, or have worked, at Inktel should receive notice of this lawsuit and receive an opportunity to join in this case." *Id.* at p. 20 ¶ 23; p.5 ¶ 21; p. 35 ¶ 21. Plaintiffs also gave notice of filing three FLSA consent forms—one for each Plaintiff— on September 30, 2025. (Doc. 49). Other than Plaintiffs' consents to join their own lawsuit, none have been filed.

If anything, Plaintiffs' exhibited materials demonstrate disparity among independent contractors. Regarding job requirements, Plaintiff Alexander, Plaintiff Dixon, and Plaintiff Price all state they worked as customer support agents for Inktel client Roadside Project, with duties to "schedule roadside assistance for vehicles of insured customers." Doc. 43-1 at p. 2 ¶¶ 3, 6; p. 17

---

[2] Inktel has moved to dismiss the collective action allegations in Plaintiffs' Amended Complaint, and that motion is currently pending. *See* Doc. 32.

¶¶ 3, 6; p. 32 ¶¶ 3, 6. Plaintiff Dixon also worked as a remote call center agent for Sephora "processing refunds for customers who purchased beauty products." *Id.* at 17 ¶ 7. Those averments alone demonstrate the dissimilarities in job duties across Inktel's different independent contractor functions and various Clients.

And as Plaintiffs' own evidence—the two Independent Contractor Agreements attached to their declarations–shows, independent contractors had different pay and scheduling provisions too. For her work with Sephora, Plaintiff Dixon was paid an hourly rate of $18.00, for "a minimum of" 32 hours a week, between 8:00am and 12:15am EST, Mondays through Sundays. Doc. 43-1 at 29. Plaintiff Alexander, on the other hand, was paid $16.80 an hour for her work with Roadside Project, for "an average of" 30 hours a week, between 8:30am and 8:20pm EST, Mondays through Sundays. *Id.* at 14. Plaintiff Price does not provide any Independent Contractor Agreement or other agreement between her and Inktel in connection with the Motion, and neither Plaintiff Price nor Plaintiff Dixon state their pay provisions when working as independent contractors with Roadside Project. *See generally id.*

In their Amended Complaint, Plaintiffs specifically reference other independent contractor functions related to "email and chat-based customer service, technical support, and sales," AC ¶ 3, but they do not provide any information, in their pleading or this Motion, to explain what those independent contractors' job responsibilities or pay provisions are, let alone why they are sufficiently similar to Plaintiffs' or the collective's as a whole. *See generally* Doc. 43-1. Nonetheless, Plaintiffs' form declarations claim in unison, "I know that my job duties and daily schedule were identical to my fellow call center agents, both 'independent contractors' and W-2 employees alike, because I spoke to those workers on a regular basis, and they confirmed they were performing the same tasks I was." Doc. 43-1.

As Inktel demonstrates herein, Plaintiffs lackluster evidence and argument are nowhere near enough to satisfy the two-pronged test for conditional certification employed in the Eleventh Circuit. The Court should accordingly deny the Motion in full.

## LEGAL STANDARD

District courts in the Eleventh Circuit "use a two-stage process in deciding whether to create an opt-in class and to facilitate notice" pursuant to § 216(b)—the conditional certification stage and the decertification stage. *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)). At this first conditional certification stage, "the district court should determine: 1) whether there are other employees who wish to opt-in to the action; and 2) whether those employees are 'similarly situated' with respect to their job requirements and pay provisions." *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1297 (N.D. Ga. 2012) (citing *Dybach*, 942 F.2d at 1567–68). Plaintiffs have the burden to demonstrate both prongs of the inquiry are met. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096-1097 (11th Cir. 1996).

## ARGUMENT AND MEMORANDUM OF LAW

Plaintiffs fall far short of either showing required to warrant conditional certification. Plaintiffs cannot meet their burden to show other independent contractors are similarly situated with no facts establishing what those contractors' pay provisions and job responsibilities are, let alone how they are like Plaintiffs' or the proposed collective's. *See Dybach*, 942 F.2d at 1567–68. Nor can Plaintiffs demonstrate other members of the proposes collective desire to opt-in, where the reasonable inference given the nonparticipation thus far begets the opposite conclusion.

Instead of supporting their contentions with evidence, Plaintiffs attempt to fall back on the so-called "modest" burden to demonstrate a reasonable basis for their claim at this stage. Mot. at

8. But while "at this stage, Plaintiffs' burden is not heavy, it is not invisible." *Brooks v. A Rainaldi Plumbing, Inc.*, U.S. Dist. LEXIS 89417, at *6 (M.D. Fla. Dec. 8, 2006); *see also Beecher*, 904 F. Supp. 2d at 1297-98 (collecting cases) ("Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations."). Modest burden aside, Plaintiffs provide no adequate basis to certify a collective here.

### A. Plaintiffs Fail to Show Other Contractors Desire to Opt-In.

In their Motion, Plaintiffs barely discuss the requirement that other similarly situated individuals wish to opt-in to this suit. *See Dybach*, 942 F.2d at 1568. Their declarations do not add anything material either; each Plaintiff claims simply that she "believe[s] all remove call center workers who work, or have worked, at Inktel should receive notice of this lawsuit and receive an opportunity to join in this case." Doc. 43-1 at p. 20 ¶ 23; p.5 ¶ 21; p. 35 ¶ 21.  But "a showing that others desire to opt-in must be made before notice is authorized." *Mackenzie v. Kindred Hosp. E.,* 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Dybach*, 942 F.2d at 1567) (emphasis added).

Plaintiffs nonetheless insist incorrectly their lack of supporting, or any, evidence of willing participants is acceptable because their burden of proof is "not onerous." Mot. at 10. While that may be true, it still requires that "[a]t a minimum, the named plaintiff should offer affidavits or declarations of consent to join by other individuals stating they are similarly situated and wish to join the suit." *Gomez v. United Forming, Inc*., 2009 U.S. Dist. LEXIS 101804, at *4 (M.D. Fla. Oct. 15, 2009) (citation omitted); *see also Calvo v. Summit Broadband Inc*., 2018 U.S. Dist. LEXIS 131381, at *28 (M.D. Fla. Apr. 17, 2018) (citation omitted) ("Plaintiff may present evidence of those who desire to opt in by affidavit, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. Plaintiff may not, however, rely on speculative, vague, or conclusory allegations.").

6

Notwithstanding their "belief" that other individuals should be notified of this litigation, at bottom, "Plaintiffs have not filed a single affidavit or declaration of consent to join stating that another individual is a similarly situated employee and wants to join this suit." *Cartner v. Hewitt Assocs., LLC*, 2009 U.S. Dist. LEXIS 97595, at *5-6 (M.D. Fla. Oct. 7, 2009). "That deficiency, alone, is fatal to Plaintiffs' Motion." *Id.* (denying conditional certification); *see also Manzi v. Hartman & Tyner, Inc.*, 2011 U.S. Dist. LEXIS 73562, at *5-6 (S.D. Fla. July 8, 2011) ("Plaintiff stated, 'I am aware of other poker dealers who are willing to join this lawsuit,' but he did not expand on his alleged 'awareness.' . . . Plaintiff's conclusory statement, without any other details, cannot provide the basis for class certification."); *Rappaport v. Embarq Mgmt. Co.*, 2007 U.S. Dist. LEXIS 92869, at *8 (M.D. Fla. Dec. 18, 2007) (quoting *Haynes v. Singer, Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983)) ("'[U]nsupported allegations that . . . additional plaintiffs' exist are insufficient to meet the plaintiffs' burden."); *Mackenzie*, 276 F. Supp. 2d at 1220-21 ("[U]nsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify notice."); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) ("[A] plaintiff's mere stated belief in the existence of other employees who desire to opt-in is insufficient.").

In sum, "[a] plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." *Rodgers v. CVS Pharmacy, Inc.*, 2006 U.S. Dist. LEXIS 23272, at *18 (M.D. Fla. Mar. 22, 2006). Because that is all Plaintiffs offer here, they fail to satisfy this first precondition to certification.

**B. Plaintiffs Fail to Demonstrate a Similarly Situated Collective.**

Even had Plaintiffs made the requisite showing that other workers would opt-in (they did not), their failure to demonstrate other similarly situated employees would doom their Motion regardless. On this prong of the inquiry, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1259 (S.D. Fla. 2016) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). This means Plaintiffs "must show that [they] and those who desire to opt in are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Rife*, 219 F. Supp. 3d at 1259 (quoting *Dybach*, 942 F.2d at 1567-68.

Plaintiffs fail to make that showing here (of course, they provide no evidence that anyone else desires to opt-in at all). Regarding pay provisions and job requirements, the little evidence Plaintiffs provide shows <u>disparity</u> among different independent contractor positions, not similarity, as the Sephora and Roadside Project Independent Contractor Agreements differ as to pay rate, weekly hours, and work schedules. *See* Doc. 43-1. As to job duties, Plaintiffs' declarations indicate Roadside Project contractors scheduled roadside assistance for vehicles of Inktel's Clients' insured customers, compared to Sephora contractors who processed refunds for retail beauty customers. *Id.* at p. 2 ¶¶ 3, 6; p. 17 ¶¶ 3, 6, 7. Plaintiffs provide <u>no specifics</u> about the job duties of other independent contractors who had distinct roles like "sales" or "technical support" either, AC ¶ 3, nor about the independent contractors who worked with other Inktel Clients like, for example, educational institutions or disaster recovery operations.

Yet, Plaintiffs' cut-and-paste declarations all claim in identical and conclusory (and factually inaccurate) fashion, "I know that my job duties and daily schedule were identical to my fellow call center agents, both 'independent contractors' and W-2 employees alike, because I spoke to those workers on a regular basis, and they confirmed they were performing the same tasks I

was." Doc. 43-1 at p. 3 ¶ 7; p. 18 ¶ 7; p. 33 ¶ 7. This contention that Plaintiffs speak to the "the hundreds of [unidentified] individuals that [Inktel] classifies as independent contractors" on a regular basis is almost as nonsensical as their claim that all of them perform "identical" job duties, *see* AC ¶ 3, and fails to carry Plaintiffs' burden to show a similarly situated collective. *See Denison v. First Family Ins*., No. 2:20-cv-89-FtM-66MRM, 2020 U.S. Dist. LEXIS 253799, at *15 (M.D. Fla. Oct. 5, 2020) (where "three cut-and-paste, form declarations from Plaintiff[s] . . . are identical and consist of conclusory assertions," they "are not probative of the similarly situated question," and certification "should be denied for this reason alone").

Without supporting evidence, Plaintiffs fail to meet their burden to show proposed collective members had similar job responsibilities. *Rodgers*, 2006 U.S. Dist. LEXIS 23272, at *18 (plaintiffs failed to show similarity with collective where their declarations "do not describe their job requirements and/or job descriptions to allow for an evaluation of similarities"). Plaintiffs likewise fail to show proposed collective members are similarly situated with regards to their pay provisions. *See Echevarria v. Las Vegas Beach, Inc*., 2010 U.S. Dist. LEXIS 61107, at *5-6 (S.D. Fla. June 1, 2010) (denying conditional certification where plaintiffs worked at different locations and were subject to different pay provisions).

Moreover, Plaintiffs' attempt to merge multiple independent contractor roles (customer service, technical support, roadside assistance, sales, and far beyond) for multiple Inktel clients (including roadside assistance services, beauty retailers, educational institutions, and "many Fortune 500 companies," among many others), into a single job description of "call center representatives." AC ¶¶ 3, 16, mirrors that which failed to warrant conditional certification in the analogous case, *Tussing v. Quality Resources, Inc.*, 2009 U.S. Dist. LEXIS 110190 (M.D. Fla. Nov. 25, 2009). Just like Plaintiffs' declarations here, the *Tussing* plaintiffs submitted "largely the same

9

affidavit signed by [multiple] different employees, with few minor differences and the hope that all jobs will be considered fungible." *Id.*, at *7. The *Tussing* plaintiffs likewise sought to certify a collective where "[a]ll job positions—the Sales Representative, the Verification Representative, the Flipper, Quality Control, and the Customer Service Representative—are merged into one job description—a call center representative." *Id.*, at *7. As that court logically reasoned, the plaintiffs' "woefully insufficient affidavits" coupled with their conclusory collective definition "leads to the incredible conclusion that all of the 200 or 300 or more employees of Quality Resources hold the exact same job." *Id.*, at *8. The same is true here, where Plaintiffs seek to represent a collective consisting of all the "hundreds of individuals that [Inktel] classifies as independent contractors," no matter their job duties. AC ¶ 3.

In short, Plaintiffs' unsupported generalizations do not provide sufficient evidence of a collective of similarly situated employees. "Indeed, federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only the conclusory allegations of few employees," as Plaintiffs do here. *Rappaport*, 2007 U.S. Dist. LEXIS 92869, at *11 (collecting cases). This Court should do the same.

### C. Plaintiffs' Claims Require Individualized Inquiries Unsuitable for Collective Certification.

Because "[t]he FLSA's overtime and minimum wage protections . . . extend only to 'employees,'" Plaintiffs' unpaid overtime claims hinge on whether they are truly independent contractors like their agreements with Inktel state, or employees covered by the FLSA. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing 29 U.S.C. §§ 206, 207). This determination depends on "the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence," based on a number

of non-exclusive factors. *Scantland*, 721 F.3d at 1311, 1312 n.2 (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). No one factor is controlling, and the weight of each "depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case." *Scantland*, 721 F.3d at 1312 n.2. At bottom, "the overarching focus of the inquiry is economic dependence," focusing on "whether an individual 'is in business for himself.'" *Id.* (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301-02 (5th Cir. 1975)). Plaintiffs concede the economic reality test is appropriate to determine their entitlement to the FLSA protections they claim, and advocate in their pleading for its use. *See* AC ¶ 19–22.

As follows, the relevant inquiry is highly individualized and fact-specific. For this reason, claims like Plaintiffs that rely on the economic reality test are unsuitable for a collective action. As the court explained in decertifying a collective in, *Carrera v. UPS Supply Chain Sols.*, 2012 U.S. Dist. LEXIS 192917, at *30-31 (S.D. Fla. Sep. 14, 2012),

> The common evidence that Plaintiffs rely on to show collective similarity are SCS's Independent Contractor Transportation Agreements and its policies respecting couriers. Those agreements and policies, however, expressly classify couriers as "independent contractors" and disclaim any alleged employer/employee relationship. So to sustain their substantive misclassification claims and establish that they are employees pursuant to the "economic reality test," Plaintiffs will have to demonstrate fact-specific deviation from the terms of SCS's agreements and policies. Here . . . . the evidence essential to that demonstration varies significantly from plaintiff to plaintiff.

Such individualized issues are an additional reason to deny Plaintiffs' Motion. *Id.*

D. **Plaintiffs' Collective Definition Is too Broad to Certify.**

Plaintiffs' Motion fails for the additional reason that their proposed collective definition is overbroad. *See Rife*, 219 F. Supp. 3d at 1260 ("In determining whether conditional certification is appropriate, the Court may consider whether the proposed class is overbroad."). Plaintiffs'

11

collective "all current and former [independent contractors]" would include both employees who are allegedly subject to the FLSA's overtime wage provisions and those who are not, since Plaintiffs do not limit their definition regarding amount of hours worked, or require that collective members worked overtime at all. Thus, even if certain independent contractors can be considered employees, they may not be subject to the FLSA's overtime wage provisions Plaintiffs claim were violated. *See Lange v. Tampa Food & Hosp., Inc.*, No. 8:19-cv-34-CEH-CPT, 2021 U.S. Dist. LEXIS 32199, at *32 (M.D. Fla. Feb. 22, 2021) ("[E]ven if he is considered an employee while working as a day-manager, the overtime wage provisions of the FLSA would not apply as Plaintiff was working less than 40 hours per week."). That Plaintiffs' collective would include all independent contractors, even those who are not entitled to overtime pay, evidences its overbreadth, an additional reason why their Motion should be denied. *See Robinson v. Dolgencorp, Inc.*, 2006 U.S. Dist. LEXIS 85471, at *24 (M.D. Fla. Nov. 13, 2006) (denying conditional certification where plaintiff failed to show how some part-time members "would have been required to work overtime hours").

## CONCLUSION

For the foregoing reasons, Defendant Inktel Contract Center Solutions, LLC, respectfully requests the Court deny Plaintiffs' Motion in its entirety.

Dated: November 4, 2025

Respectfully submitted,

By: */s/ Seth D. Haimovitch*
DAVID L. FERGUSON
Florida Bar Number: 0981737
Ferguson@kolawyers.com
SETH D. HAIMOVITCH
Florida Bar Number: 0085939
Haimovitch@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500

Fort Lauderdale, Florida 33301<br>
Telephone No. (954) 525-4100

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via email via the CM/ECF system to all counsel of record on this 21st day of April 2025.

By: <u>*/s/ Seth D. Haimovitch*</u>
SETH D. HAIMOVITCH
Florida Bar Number: 0085939
Haimovitch@kolawyers.com