IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GWENDOLYN A. DIXON, STACIE ALEXANDER, and TASIA PRICE, individually, and on behalf of the class and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>INKTEL CONTACT CENTER SOLUTIONS, LLC,<br><br>*Defendant*. | Case No. 1:25-cv-20924-JEM<br><br>CLASS and COLLECTIVE ACTION |

**PLAINTIFFS' REPLY IN SUPPORT OF**
<u>**CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**</u>

**SIRI & GLIMSTAD LLP**
Jessica Wallace (Bar No. 1008325)
Walker D. Moller (*pro hac vice*)
Oren Faircloth (*pro hac vice*)
William H. Payne (*pro hac vice*)
20200 W. Dixie Highway, Ste. 902
Aventura, FL 33180
Tel: (888) 747-4529
E: jwallace@sirillp.com
E: wmoller@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

A.      **Introduction.**

Inktel's Opposition dodges the most salient question at this stage of the case: if these workers were not similarly situated, why did Inktel assign them the same job tasks, run them through the same training and system, and subject them to the same degree of control, and then arbitrarily classify some as employees and others as contractors?

That is the question that conditional class certification ultimately turns on. Plaintiffs exposed a common, top-down misclassification policy that binds the putative collective together under a single theory of liability and meets the Eleventh Circuit's modest bar for conditional certification. Instead of confronting that policy, Inktel tries to repackage merits arguments to argue that remote call center agents, regardless of how they were paid, have different job requirements based on the internal clients to which they were assigned, which in no way undermines, and actually supports, Plaintiff's unified theory of liability. The only question is whether Inktel had a common policy and company-wide practice of classifying remote call center agents as Contractors in job roles Inktel also determined warranted W-2 treatment. The company did, and Plaintiffs offer detailed declarations and materially uniform Independent Contractor Agreements showing that Inktel had common policies of control over scheduling, training, scripting, and job performance across various client assignments. At the conditional certification stage, courts need not resolve factual disputes or credit defense gloss over sworn evidence. Rather, for the conditional certification inquiry, the question is not whether Plaintiffs have proven misclassification; it is whether they have shown a reasonable basis to notify those subjected to the same policy. They have plainly done so here.

**First**, Inktel claims Plaintiffs have not shown that others would want to opt in, improperly turning § 216(b) into a numerosity test. Plaintiffs filed consent forms and, more importantly, submitted first-hand declarations describing their daily interaction with other remote agents performing identical scripted tasks under the same scheduling, adherence, and monitoring rules, while uniformly classified as 1099 contractors. That alone provides a reasonable basis to believe others will join upon notice and satisfies the "interest to join" prong.

**Second**, in a failed attempt to rebut the clear evidence that Plaintiffs and putative collective members are "similarly situated", Defendant conflates minor variations with material differences between members of the collective. The Eleventh Circuit requires substantial—***not*** identical—similarity and courts regularly grant notice where standardized agreements and centralized policies provide common proof because the relevant factors rise or fall on common evidence. Inktel argues that putative members are not "similarly situated" because Contractors served different clients or had varying rates or schedules. But the job is the same across client assignments: remote customer support using Inktel-controlled systems, scripts, and supervision. Even if, *arguendo*, Inktel's remote call center agents had vastly different job requirements (they did not), they would still be "similarly situated" because Inktel assigned them the same role but treated

1

some of them as W-2 employees and some of them as Contractors, leading to the illegal pay practices at the center of this case. Thus, no matter how stridently Inktel tries to distinguish one call center agent from another, they cannot escape their own common policy of misclassification.

**Third**, Defendant's argument regarding the "economic realities" puts the horse before the cart. Under the two-stage framework, notice issues first, based on a modest showing, and reserves merits disputes and factor-by-factor balancing for *decertification*. Plaintiffs challenge a centralized misclassification policy reflected in standardized agreements and common control features. Courts in this Circuit conditionally certify such misclassification collectives.[1]

**Finally**, Defendant calls the definition of the collective overbroad because it might include contractors who did not work overtime. That is no basis to deny notice and is easily remedied.

Conditional certification benefits both sides. Inktel cannot meaningfully address liability on the merits until the class that it created is before the Court. Addressing overtime liability on a piecemeal basis would be wasteful and inefficient. Plaintiffs, for their part, have met and exceeded the Eleventh Circuit's lenient standard for authorizing notice to Contractors like them. Plaintiff's Motion for Conditional Certification should, therefore, be granted.

**B.     Defendant's "Relevant Background" Section Misstates the Record And Ignores the Only Standard That Matters at the Notice Stage.**

Inktel begins its Opposition with a "Relevant Background" section that is neither accurate nor relevant to the Court's task at conditional certification. Plaintiffs anticipated this because Defendant did the same thing in its Motion to Dismiss. *See* Plaintiff's Motion, ECF No. 43, p. 2 n. 2. And, sure enough, Defendant states in its Opposition, "[t]he term "Contractors" is defined elsewhere in the Amended Complaint to mean the 'hundreds of individuals that [Inktel] classifies as independent contractors.'" Opposition, ECF No. 52, p. 3. That is simply wrong. The term "Contractors" is precisely defined in the First Amended Complaint as "workers […] trained as customer service and call center representatives [who] perform tasks and have responsibilities that are identical to Defendant's employees, including voice, email, and chat-based customer service, technical support, and sales." ECF No. 29, p. 2, ¶ 3. And, again, in the Motion for Conditional Certification: "the remote call center agents whom Inktel classifies as 1099 independent contractors nationwide **are** the putative class members who should get notice." ECF No. 43, p. 2 (emphasis original). Inktel knows exactly who these workers are and refers to them in their Opposition. *See* Opposition, ECF No. 52, p. 8 (accusing Plaintiffs of not having information about "independent contractors who had distinct roles like "sales" or "technical support" […] who worked with other Inktel

---

[1] *See Martins v. Flowers Foods, Inc.*, No. 8:16-cv-3145, 2018 U.S. Dist. LEXIS 234084, at *16 (M.D. Fla. Mar. 28, 2018) (certifying where all putative members signed materially similar agreements and were subject to common policies; differences in route or location did not defeat similarity at notice stage)

2

Clients like, for example, educational institutions or disaster recovery operations.").

Next, Inktel suggests that Plaintiffs are attempting to rope in every independent contractor who ever performed any task for any Inktel client. Not only is that not relevant at the conditional certification stage and unlikely to be relevant on the merits either, but it is also a mischaracterization designed to generate dissimilarity where none exists. Plaintiffs' declarations and Independent Contractor Agreements ("Agreements") show that they were all uniformly classified as 1099 contractors performing the same core job, i.e., remote call-center and customer support, and subject to the same monitoring tools, scripts, schedules, non-negotiable IT requirements, performance scoring, and discipline up to termination. *See* Dixon Dec., ¶ 13, Ex. 1 (Sephora Agreement); Alexandar Dec., ¶ 11, Ex. 1, (The Roadside Protect Agreement); Price Dec., ¶ 11 (Exhibit 1). Plaintiffs' declarations show that Contractors underwent common customer onboarding, training, and entered into standardized "Independent Contractor Agreements." *Id.* Contractors used Inktel-mandated scripts and metrics while being subjected to Inktel's monitoring and performance requirements, the very policies that drive the misclassification claims and unify the collective. *Id.* Whether workers were assigned to Roadside, Sephora, or any other client does not change the analysis.

At the notice stage, minor variations in task flow or client account details carry no weight. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) ("Plaintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members"). The question is whether the workers performed substantially the same job under a common pay practice and common control policies. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261–63 (11th Cir. 2008) (holding that centralized policies can render employees similarly situated even if factual differences exist)

This is exactly the sort of evidence the courts in the Eleventh Circuit look at to satisfy the notice-stage requirements of conditional certification. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991) (the notice-stage inquiry focused on whether potential opt-ins exist and are similar in job requirements and pay provisions). Inktel's attempt to recast call center work as a patchwork of unrelated roles is not supported by the record and is a transparent effort to manufacture dissimilarity where the company's own policies show uniformity.

C.   **Inktel Pushes an "Interest to Join" Standard the Law Does Not Require.**

Inktel's argument that Plaintiffs have not shown sufficient "interest to join" rests on a demand the Eleventh Circuit has never imposed. The standard for "interest to join" is a modest one: Plaintiffs need only demonstrate a reasonable basis to believe that other similarly situated workers exist who may wish to join, not produce a parade of formal consents or numerosity of affidavits. *See Grayson*, 79 F.3d at 1097) ("The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits…."); *see also Dybach.*, 942 F.2d at 1567–68 (holding that the notice-stage inquiry asks whether there are other employees who wish to opt in);

3

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001) (holding that courts employ a two-stage framework and, at the first "notice" stage, apply a lenient standard that typically results in conditional certification); *Pena v. Handy Wash Inc.*, 29 F. Supp. 3d 1289, 1299 (S.D. Fla. 2014) (holding that the "desire to opt-in" showing "is not onerous" and can be satisfied with affidavits or similar evidence); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007) (holding that affidavits and consents are sufficient to show that others may desire to join at notice stage); *King v. CVS/Caremark Corp.*, No. 07-21824, 2008 U.S. Dist. LEXIS 99023, at *21 (S.D. Fla. Nov. 24, 2008) (holding that declarations and consents adequately demonstrate that other similarly situated employees may desire to opt in). As these cases show, the required showing, at this stage of the case, is *minimal*.

Plaintiffs more than satisfy the threshold showing. The record provides three detailed worker declarations describing day-to-day interaction with other remote call center agents performing the same scripted work under the same schedules, monitoring, and discipline, alongside uniform contracts and policies evidencing centralized control and misclassification. *See* Ex. A, Dixon Dec. ¶¶ 7–12; Alexander Dec. ¶¶ 8–14; Price Dec. ¶¶ 7–12 (each attesting to identical duties, schedules, monitoring, and uniform agreements). Moreover, Plaintiffs have also filed consents on the docket, each of which confirms that additional similarly situated workers will join upon receiving notice. *See* Notice of Filing Consents (ECF No. 49) (reporting consents for the three named Plaintiffs). Section 216(b) notice exists precisely because workers cannot be expected to join a lawsuit they do not yet know exists.

Inktel's claim that Plaintiffs rely on mere "belief" is simply false. Plaintiffs describe, in sworn detail, the same scheduling rules, unpaid boot-up time, extension of calls past scheduled shifts without additional pay, real-time computer monitoring, and a weekly platform-access fee. *See* Dixon Dec. ¶¶ 9(a)–(g), 10, 17; Alexander Dec. ¶¶ 9(a)–(g), 15; Price Dec. ¶¶ 9(a)–(g). These are first-hand observations, not speculation.

Inktel leans heavily on cases rejecting bare, conclusory statements of belief, but those cases are readily distinguishable. *See Mackenzie v. Kindred Hosp. E.*, 276 F. Supp. 2d 1211, 1220–21 (M.D. Fla. 2003) (holding that speculation does not establish desire to opt in; distinguishable because Plaintiffs here offer sworn, first-hand declarations plus filed consents at the notice stage); *Cartner v. Hewitt Assocs., LLC*, No. 6:09-cv-1295, 2009 U.S. Dist. LEXIS 97595, at *5–*6 (M.D. Fla. Oct. 7, 2009) (holding that the absence of a single affidavit or consent beyond counsel's belief was fatal); *Manzi v. Hartman & Tyner, Inc.*, No. 10-62057, 2011 U.S. Dist. LEXIS 73562, at *5–*6 (S.D. Fla. July 8, 2011) (holding that a bare, conclusory assertion that "others are willing to join" without facts is insufficient); *Rappaport v. Embarq Mgmt. Co.*, No. 6:06-cv-354, 2007 U.S. Dist. LEXIS 92869, at *8, *11 (M.D. Fla. Dec. 18, 2007) (holding that allegations absent evidence of a class-wide policy are insufficient). By contrast, Plaintiffs' declarations identify the shared job functions, the shared control features, the shared scheduling and monitoring rules,

and the shared compensation practices that apply across the contractor workforce. *See* Dixon Dec.; Alexander Dec.; Price Dec. That is the opposite of a bare conclusory assertion.

The FLSA does not require Plaintiffs to produce pre-notice opt-ins beyond the named workers because that would flip the statute on its head, making notice dependent on workers having already discovered the lawsuit on their own. The FLSA exists to prevent that barrier, not reinforce it. If anything, the fact that workers have not already opted in underscores why notice is necessary, not why notice via conditional certification should be denied.

In sum, Plaintiffs have cleared the Eleventh Circuit's minimal "interest to join" threshold at the notice stage by putting forth multiple detailed declarations reflecting first-hand knowledge of similarly situated contractors subjected to uniform policies, along with filed consents. *See Grayson*, 79 F.3d at 1097 (holding that plaintiffs meet the notice-stage burden by showing a reasonable basis that similar victims exist and may wish to join; numerous consents are not required).

**D.   The Workers Are Similarly Situated Because Inktel Subjected Them to the Same Job, the Same Controls, and the Same Misclassification Policy.**

Defendant's "similarly-situated" argument rests on exaggerating minor variations in client assignments while ignoring the only facts that matter at the notice stage: every Contractor performed the same remote call-center function under the same company-wide controls, and Inktel classified some of those workers as W-2 employees while labeling others as "independent contractors." This uniform treatment more than satisfies the Eleventh Circuit's "fairly lenient" standard. *See Hipp*, 252 F.3d 1208, 1218–19 (11th Cir. 2001) (holding that courts employ a two-stage framework and, at the first "notice" stage, apply a lenient standard that typically results in conditional certification); *Grayson*, 79 F.3d 1086, 1096–99 (11th Cir. 1996) (holding that plaintiffs need only show a reasonable basis that other similarly situated employees exist; "similarly situated" does not require absolute identity of circumstances); *Dybach*, 942 F.2d 1562, 1567–68 (11th Cir. 1991) (holding that, at the notice stage, courts consider whether there are similarly situated employees with respect to job requirements and pay provisions under a preliminary, lenient standard).

Here, Plaintiffs' declarations and the materially identical Independent Contractor Agreements for Roadside Protect and Sephora show a cohesive, centralized system governing all remote call center workers. They show the same monitoring, training/certification, performance review, confidentiality, non-solicitation, IT/security, and usage-fee provisions, regardless of client assignment. *See* Ex. A, Alexander Dec. Ex. 1; Dixon Dec. Ex. 1; Alexander Dec. ¶¶ 11, 13(a)–(i); Dixon Dec. ¶¶ 12–14(a)–(i) (attaching and describing materially identical agreements with uniform control provisions). They show (1) fixed schedules and pre-set breaks requiring approval; (2) uncompensated pre-shift boot-up; (3) instructions not to end calls, leading to unpaid work after scheduled shifts; (4) real-time computer monitoring with penalties for

5

deviating from scripts; and (5) a weekly $9.98 platform "Usage Fee" charged only to contractors.  See Ex. A, Dixon Dec. ¶¶ 9(a)–(g), 10(b)–(f), 17; Alexander Dec. ¶¶ 9(a)–(g), 15; Price Dec. ¶¶ 9(a)–(g). These uniform policies and common compensation practices, not minor variations in account or pay rate, are what matter at the first stage and supply common proof suitable for collective treatment. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261–63 (11th Cir. 2008) (holding that centralized policies can render employees similarly situated even if some factual differences exist); *Martins v. Flowers Foods, Inc.*, No. 8:16-cv-3145, 2018 U.S. Dist. LEXIS 234084, at *16 (M.D. Fla. Mar. 28, 2018) (holding that standardized agreements and uniform policies supported conditional certification despite route or location differences); *Florexil v. Gen. Freight Experts, Inc.*, No. 23-cv-60876, 2023 U.S. Dist. LEXIS 176848, at *7–*9 (S.D. Fla. Oct. 2, 2023) (holding that uniform misclassification and common pay practices sufficed for notice notwithstanding account differences).

      Defendant's focus on task differences, such as whether a call involved roadside assistance versus processing refunds, ignores that both sets of contractors performed the same core function and that at the conditional certification, these nuances do not undermine approving notice. Nor do variations in rate or shift windows defeat similarity where the gravamen of the FAC is uniform misclassification and common overtime/pay practices applicable across the Contractor workforce. *See* Dixon Dec. ¶¶ 9(b), 10(b)–(c), 17; Alexander Dec. ¶¶ 9(b)–(c), 15; Price Dec. ¶¶ 9(b)–(c), 15. Courts routinely grant notice under these circumstances, leaving any fine-grained variations for the decertification stage. *See Hipp*, 252 F.3d at 1218–19 (holding that first-stage standard is lenient and that individual variations are addressed after discovery at decertification). This Court should focus on how all Contractors performed the same work and were subjected to the same misclassification and unpaid time practices. *See* Dixon Dec. ¶¶ 7–12; Alexander Dec. ¶¶ 7–11; Price Dec. ¶¶ 7–11 (identical job controls, scripts, monitoring, and schedules across assignments). Inktel cannot hire individuals for the same job, under the same controls, through the same systems, and then argue that the workers performing that job are too different to receive notice simply because their client assignments differed.

      Moreover, the cases Defendant relies on are inapposite.  The *Denison* case rejected truly "cut-and-paste" affidavits devoid of specific, corroborated facts. *See Denison v. First Family Ins.*, No. 2:20-cv-89-FtM-66MRM, 2020 U.S. Dist. LEXIS 253799, at *15 (M.D. Fla. Oct. 5, 2020) (holding that identical, conclusory affidavits lacking factual linkage to a common practice are not probative of similarity). *Rodgers* concerned declarations that did not describe job requirements or pay practices in contrast to Plaintiffs' declarations which provide those details, including fixed schedules, scripts, monitoring, uncompensated time, and the access fee. *See Rodgers v. CVS Pharmacy, Inc.*, 2006 U.S. Dist. LEXIS 23272, at *18 (M.D. Fla. Mar. 22, 2006) (holding that affidavits lacking job requirement and pay-practice detail could not establish similarity). *Cf.* Dixon Dec. ¶¶ 9–10, 17; Alexander Dec. ¶¶ 9, 15; Price Dec. ¶¶ 9. In *Echevarria*,

6

this Court denied notice where plaintiffs worked at different locations under materially different pay provisions. *See Echevarria v. Las Vegas Beach, Inc.*, 2010 U.S. Dist. LEXIS 61107, at *5–*6 (S.D. Fla. June 1, 2010) (holding that different locations with distinct pay provisions defeated similarity).

Here, Plaintiffs challenge uniform pay practices across remote contractors, including nonpayment for pre- and post-shift work and a uniform platform fee. *See* Dixon Dec. ¶¶ 9(b), 10(b)–(c), 17; Alexander Dec. ¶¶ 9(b)–(c), 15; Price Dec. ¶¶ 9(b)–(c). The *Tussing* case rejected lumping disparate positions without a unifying policy. *See Tussing v. Quality Res., Inc.*, 2009 U.S. Dist. LEXIS 110190, at *7–*8 (M.D. Fla. Nov. 25, 2009) (holding that merging distinct jobs without proof of a unifying policy is insufficient). Those decisions involved affidavits with no detail, workers with fundamentally different job categories, or a complete absence of common policies. Here, by contrast, Plaintiffs present a single call-center role performed on Inktel systems under uniform agreements and policies controlling scripts, adherence, monitoring, training, reviews, and pay practices. *See* Dixon Dec. ¶¶ 12–14; Alexander Dec. ¶¶ 11–13; Price Dec. ¶¶ 11–12.

Inktel asks the Court to conduct the second-stage decertification analysis now. But that is not the law. The Eleventh Circuit requires, at this stage, only a modest showing of substantial similarity and on this record—consisting of uniform agreements, centralized policies governing schedules, scripts, monitoring, training, reviews, a uniform access fee, and sworn evidence of uncompensated pre- and post-shift time—Plaintiffs have exceeded that requirement.

E. **Inktel's "Economic Realities" Test is Premature and Misstates the Law at the Notice Stage.**

Inktel's assertion that the economic-realities test precludes conditional certification because it requires individualized inquiries is premature at the notice stage. *See Hipp*, 252 F.3d at 1218–19 (holding courts apply a lenient standard at the notice stage to facilitate notice and reserve a more rigorous inquiry for decertification after discovery). At the notice stage, courts do not conduct a merits-based assessment. *Pares v. Kendall Lakes Auto., LLC*, No. 13-cv-20317, 2013 U.S. Dist. LEXIS 90499, at *12 (S.D. Fla. June 26, 2013) ("'courts do not review the underlying merits of the action' when 'making a determination in whether to conditionally certify a proposed class for notification purposes only.'" (citation omitted)). At this stage, courts simply ask whether common evidence could answer the misclassification question on a collective basis. On the present record, this Court can plainly do so here.

The "economic realities" factors turn on centralized policies and standardized agreements that supply common proof, including the nature and degree of control, workers' opportunity for profit or loss, the parties' investment, skill required, permanence of the relationship, and whether the work is integral to Inktel's business. *See Scantland*, 721 F.3d at 1311–12 & n.2 (holding that employee status under the FLSA turns on the totality of the economic-realities factors, focusing on economic dependence). Each of these factors will be evaluated using the same proof for every remote call center worker because Inktel subjected

7

all of them to the same training/certification, the same systems, the same performance metrics, the same training and scripting requirements, the same scheduling restrictions, the same computer monitoring, and the same weekly $9.98 platform "Usage Fee." *See* Dixon Dec. ¶¶ 9(a)–(g), 10(b)–(f), 17; Alexander Dec. ¶¶ 9(a)–(g), 15; Price Dec. ¶¶ 9(a)–(g) (describing fixed schedules, unpaid boot-up, unpaid extended calls, real-time monitoring and scripting, and weekly access fee applied to contractors). Plaintiffs' motion synthesizes these common terms and practices and ties them to the economic-realities factors, underscoring the predominance of centralized proof at the notice stage. That uniformity achieves the FLSA's stated judicial efficiency goals for collective actions.

Defendant's reliance on *Scantland* and *Carrera* is misplaced because neither case supports denying notice based on theoretical individual issues at the first stage. *Scantland* articulates the merits standard for employee status and confirms that the focus is economic dependence under the totality of factors, many of which here are illuminated through common contracts and uniform practices applicable to all contractors. *See Scantland*, 721 F.3d at 1311–12 & n. 2 (holding courts assess employee status under the economic-realities factors based on the totality of circumstances). *Carrera*, by contrast, is a post-discovery decertification decision that considered plaintiff-specific deviations only after a full record, reinforcing the proper sequencing of granting notice first and addressing individualized issues later. *See Carrera*, 2012 U.S. Dist. LEXIS 192917, at *30–31 (decertifying after discovery where proof of deviations from agreements/policies varied by plaintiff, confirming individual issues are addressed at the second stage). If anything, *Carrera* reinforces why certification should be granted only *after* discovering whether the common evidence held together. That is not the inquiry today.

Here, the common proof is overwhelming. Plaintiffs' declarations and the Independent Contractor Agreements describe uniform policies that speak directly to the economic realities factors. However, whether these policies ultimately render Contractors employees under the FLSA is a merits question for a later day. For now, the only question is whether Plaintiffs have shown a reasonable basis to believe that a centralized misclassification policy can be proven through common evidence. They have. And Inktel's attempt to litigate the merits now is an improper effort to collapse the two-stage framework into one. The Eleventh Circuit does not permit that. *Morgan*, 551 F.3d at 1261 ("The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard"). Because the economic realities factors will be resolved using common proof, conditional certification is not only appropriate but is also the most efficient and effective way to adjudicate these claims.

F.   **Any Overbreadth Concerns Are Easily Addressed Through Routine Tailoring, Not Denial of Notice.**

Inktel's overbreadth argument reflects the same fundamental legal error that infects the rest of its Opposition: it treats conditional certification as a merits ruling. Again, at the notice stage, the question is

8

whether Plaintiffs have identified a definable group subjected to a common policy that can be notified, and they have. Plaintiffs define the collective as remote call-center contractors classified by Inktel as independent contractors while providing customer/contact-center services on Inktel's systems, and they support that definition with standardized Independent Contractor Agreements and sworn testimony describing uniform scheduling, monitoring, scripting, unpaid pre- and post-shift time, and a weekly $9.98 platform fee. See ECF No. 43, Pls.' Mot. at 1–7 (describing putative group as remote call-center contractors and summarizing uniform agreements and common policies). That appropriately tracks Plaintiffs' misclassification theory.

Defendant maintains that the definition is overbroad because it could include contractors who did not work overtime. But this argument misunderstands the nature of the claims. Plaintiffs challenge a *policy* (i.e., misclassification combined with uncompensated work and uniform control practices). Whether a worker ultimately proves he or she worked 40+ hour weeks goes to *damages*, not the scope of the collective. Courts should not deny notice because individual members may have different hours or damages. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–74 (1989) (holding district courts have broad discretion to manage the § 216(b) notice process to facilitate accurate, timely notice and efficient case management); *Cossaboom v. NVR Mortg. Fin.*, No. 21-cv-80627, 2022 U.S. Dist. LEXIS 234187, at *16–*18 (S.D. Fla. Feb. 1, 2022) (approving tailored notice plan and scope as part of court's case-management authority at the conditional certification stage). Courts consider overbreadth in shaping notice, but do not deny certification where modest tailoring resolves the concern. *See Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1260 (S.D. Fla. 2016) (holding that potential overbreadth may be addressed in defining the collective at notice stage rather than denying conditional certification).

Even if Inktel's concern had merit (it does not), the Court can simply tailor the definition to narrow the scope of the collective. Courts in this District have granted notice under standardized-agreement, centralized-policy records like this one, rejecting overbreadth-based denials and instead shaping the notice to the policy-affected workers. *See Martins*, 2018 U.S. Dist. LEXIS 234084, at *16 (holding standardized distributor agreements and common policies supported conditional certification without undue narrowing based on local differences); *Cossaboom*, 2022 U.S. Dist. LEXIS 234187, at *16–*18 (approving tailored notice scope and procedures at the conditional certification stage).

Defendant's reliance on *Lange* and *Robinson* is misplaced because those cases simply confirm that the FLSA's overtime provisions do not apply where a worker did not exceed 40 hours, which is resolved by limiting the collective to contractors with at least one overtime week rather than denying notice outright. *See Lange v. Tampa Food & Hosp., Inc.*, No. 8:19-cv-34, 2021 U.S. Dist. LEXIS 32199, at *32 (M.D. Fla. Feb. 22, 2021) (holding that FLSA overtime provisions do not apply where plaintiff worked fewer than 40 hours in the relevant week); *Robinson v. Dolgencorp, Inc.*, No. 5:06-cv-122, 2006 U.S. Dist. LEXIS 85471,

9

at *24 (M.D. Fla. Nov. 13, 2006) (denying where plaintiff failed to show part-time members worked overtime; indicating a definition tied to overtime hours would cure defect).

Accordingly, the Court should either approve Plaintiffs' proposed definition of remote call-center contractors or, in the alternative, refine it to "all current and former remote call-center agents whom Inktel classified as independent contractors, who provided customer/contact-center services on Inktel's systems during the limitations period, and who worked over 40 hours in at least one workweek," and authorize notice consistent with the Court's case-management discretion. *See Hoffmann-La Roche*, 493 U.S. at 169–74 (holding courts may facilitate notice and shape its terms so potential plaintiffs can make informed decisions while promoting efficient adjudication); *Rife,* 219 F. Supp. 3d at 1260 (holding overbreadth can be addressed by tailoring the collective at the notice stage).

### G. Conclusion.

Based on the foregoing, Plaintiffs respectfully ask the Court to grant their Motion for Conditional Certification of a Collection Action and approve Plaintiffs' Proposed Notice to the putative class.

Dated: December 2, 2025

Respectfully submitted,

SIRI & GLIMSTAD LLP

/s/  Jessica Wallace
Jessica Wallace (Bar No. 1008325)
Walker D. Moller (*pro hac vice*)
Oren Faircloth (*pro hac vice)*
William H. Payne (*pro hac vice*)
20200 W. Dixie Highway, Ste. 902
Aventura, FL 33180
Tel: (888) 747-4529
E: jwallace@sirillp.com
E: wmoller@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system to all counsel of record on this 2nd day of December 2025.

                                    */s/ Jessica Wallace*
                                    Jessica Wallace (Bar No. 1008325)